IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01257-PAB-MEH

BIAX CORPORATION,

    Plaintiff,

v.

NVIDIA CORPORATION,
SONY COMPUTER ENTERTAINMENT AMERICA, INC., and
SONY ELECTRONICS, INC.,

    Defendants.

### PLAINTIFF'S MOTION TO COMPEL NVIDIA TO RESPOND TO PLAINTIFF'S THIRD SET OF INTERROGATORIES AND FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Fed. R. Civ. P. 37(a), Plaintiff BIAX Corp. ("BIAX") hereby moves for an order compelling Defendant NVIDIA Corporation, ("NVIDIA") to provide complete responses and to produce all documents responsive to Plaintiff BIAX Corporation's Third Set of Interrogatories and Fourth Set of Requests for Production of Documents and Things, as more fully set forth herein.

### CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1(A)

Pursuant to D.C.COLO.LCivR 7.1(A) and Fed. R. Civ. P 37(a)(1), BIAX certifies that its counsel has, in good faith, conferred with NVIDIA in an effort to secure the information and documents sought through this motion.  BIAX served the discovery requests on May 18, 2010. NVIDIA served its responses on June 21, 2010, attached as Exhibits 1 through 2.  On June 23 and 24, 2010, the undersigned counsel conferred with NVIDIA's counsel by telephone, but the

parties did not reach agreement on the issues raised herein  Thus, in accordance with the Court's June 15 Minute Order, BIAX hereby files this Motion.

## I. ARGUMENT

As the Court knows, BIAX asserts in this litigation that NVIDIA infringes U.S. Patent Nos. 5,517,628 and 6,253,313 (the "Patents-in-Suit").  Specifically, BIAX asserts that certain NVIDIA graphics processing units ("GPUs") infringe the Patents-in-Suit.  NVIDIA's graphics processing units are incorporated into consumer products sold by other companies, such as the Sony Playstation 3 and Sony VAIO laptop computers.

As damages for the infringement of its patents, BIAX seeks to recover from NVIDIA a "reasonable royalty" on the sales of NVIDIA's infringement products, as contemplated by Section 284 of the Patent Act.  35 U.S.C. § 284 ("[u]pon a finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer …").[1]  The Federal Circuit has established a specific guide to determine the reasonable royalty due a patent holder.  A reasonable royalty is the amount that would have been set in a hypothetical negotiation between the infringer and the patent owner at the beginning of the infringement period.  *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*).

In order to determine this figure—the royalty that the parties hypothetically would have agreed upon at the time the infringement began—the fact finder is assisted by a list of considerations called the *Georgia Pacific* factors.  *Georgia Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D. N.Y. 1970).  The *Georgia Pacific* factors

---

[1]   BIAX does not seek to recover lost profits in this case.

contemplate the use of a variety of financial and other information regarding the patents, the infringing products, and the industry as a whole, such as:

> 1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.
>
> 2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.
>
> \* \* \* \* \*
>
> 6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.
>
> \* \* \* \* \*
>
> 8. The established profitability of the product made under the patent; its commercial success; and its current popularity.
>
> \* \* \* \* \*
>
> 11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.
>
> \* \* \* \* \*
>
> 13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

*Id.* at 1120.

BIAX has long sought from NVIDIA the information and documents necessary for it (and its damages expert) to conduct its reasonable royalty analysis and prepare its damages case for trial. In September 2009 BIAX served on NVIDIA its Amended First Set of Requests for Production of Documents, which included several requests for damages-related documents. NVIDIA subsequently produced a handful of documents with financial information on the

Accused Products, but the information 1) was in summary form, rather than documents created by NVIDIA in the ordinary course of business; 2) was limited to the duration of this lawsuit; and 3) was limited to direct sales in the United States.  None of these limitations were appropriate, necessitating a motion to compel by BIAX.  That motion, which was filed on June 14, is pending.  *See* Plaintiff's Motion to Compel Responses to First Set of Interrogatories and Second Set of Requests for Production of Documents and Things, June 14, 2010 (Docket No. 226).

On May 18, BIAX served on NVIDIA its Third Set of Interrogatories and Fourth Set of document requests; NVIDIA responded on June 21.  Exs. 1 and 2.  As set forth in more detail below, these discovery sets included detailed requests for information that would permit BIAX and its expert to conduct its reasonable royalty analysis and prepare its case for trial.  As of the date of this filing, NVIDIA has not produced any documents in response to these requests.  Nevertheless, NVIDIA's written responses and its counsel's communications to BIAX reveal several deficiencies in NVIDIA's responses:

a) NVIDIA refuses to produce damages-related information and documents prior to May 29, 2009, the date BIAX filed its Complaint in this matter;

b) NVIDIA refuses to produce damages-related information and documents concerning world-wide sages of its accused products;

c) NVIDIA refuses to produce financial documents as created in the ordinary course of business, instead limiting its production to summary documents created for purposes of this litigation;

d) NVIDIA has refused to produce additional information that is relevant to BIAX's reasonable royalty analysis; and

      e)      NVIDIA has failed to produce even the documents it stated it would provide to BIAX.[2]

As shown below, the limitations that NVIDIA has placed on its damages-related document production are unwarranted. The information that BIAX has requested falls squarely within the *Georgia Pacific* factors to be considered by the fact finder to determine the reasonable royalty. By denying this information to BIAX, NVIDIA handicaps BIAX's damages expert and prevents BIAX from presenting its full damages case at trial. The Court should compel NVIDIA to produce the damages-related documents that BIAX has requested.

**A.  THE COURT SHOULD COMPEL NVIDIA TO PRODUCE FINANCIAL DOCUMENTS AND OTHER DAMAGES-RELATED DOCUMENTS FROM THE PERIOD PRIOR TO THE FILING OF THIS SUIT ON MAY 29, 2009.**

NVIDIA has refused to produce financial documents and information and other damages-related documents that pre-date May 29, 2009, on the grounds that "BIAX has stipulated that it will not seek discovery of financial information related to the sales of the accused NVIDIA products prior to the date of the filing of the Complaint." *See*, *e.g.*, Ex. 2 at 6 (response to Request No. 31), citing February 11, 2010 Hearing Tr. at 22-23 (Ex. 3 hereto). As shown below, BIAX never stipulated that it would not seek financial documents that pre-date the filing of this lawsuit. NVIDIA's unilateral decision to refuse to produce such documents is unsupportable.

First, even if BIAX *were* prohibited from recovering damages on sales prior to May 29, 2009, financial and other damages-related information prior to that date would still be relevant to the *Georgia Pacific* reasonable royalty analysis. As noted above, the proper inquiry to determine

---

[2] In addition to the specific objections noted here, NVIDIA included a laundry list of boilerplate objections in response to each document request. Ex. 2 at 6 ("NVIDIA objects to this Request as overbroad, unduly burdensome, and duplicative, and not reasonably calculated to lead to the discovery of admissible evidence."). Such objections are not a sufficient basis for refusing production of documents. *In re Aircrash Disaster Near Roselawn, Ind., Oct. 31, 1994*, 172 F.R.D. 295, 306-07 (N.D. Ill. 1997).

the reasonable royalty is the amount that would have been set in a hypothetical negotiation between the infringer and the patent owner *at the beginning of the infringement period*. *Rite-Hite*, 56 F.3d at 1554; *see also Georgia Pacific*, 318 F.Supp. at 1120. NVIDIA itself acknowledges in this case that it introduced the various Accused Products on April 14, 2004, June 22, 2005, November 8, 2006, and February 21, 2008. Ex. 1 at 4. Each of these introduction dates constitute the date of the hypothetical negotiation to determine a reasonable royalty. Thus, to properly conduct its reasonable royalty analysis, BIAX requires information relevant to the *Georgia Pacific* factors that dates as least as far back as April 14, 2004, regardless of when the damages period begins. BIAX requires additional information that dates from the period of the introduction of any new Accused Products.

BIAX's damages expert, Roy Weinstein, submitted a declaration in support of BIAX's June 14 Motion to Compel that sets forth in detail the reasons that information prior to May 29, 2009, is relevant to his reasonable royalty analysis regardless of when the damages period begins. *See* Declaration of Roy Weinstein in Support of Plaintiff's Motion to Compel Responses to First Set of Interrogatories and Second Set of Requests for Production of Documents and Things, June 9, 2010 (Docket No. 226 – Ex. 11). As Mr. Weinstein explained, data as to *all* sales of infringing products, regardless of whether they ultimately are included in a damages calculation, "assist in a *Georgia-Pacific* analysis by helping to establish the date of the hypothetical negotiation, extent of use, profitability and commercial success of the infringing products, and other factors critical to an informed analysis." *Id.*, ¶ 10 (citing *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970)). BIAX is entitled to the discovery of all such information, in order to fully prepare its damages analysis and case.

6

Finally, BIAX never stipulated that it would not seek financial discovery from the period before the suit was filed.  During the February hearing, which NVIDIA relies upon, BIAX attempted to meet and confer with NVIDIA's counsel to resolve its discovery disputes.  At that time, it agreed to accept NVIDIA's financial documentation from the period beginning at the commencement of the lawsuit.  However, BIAX explicitly refused to waive its right to insist on complete discovery responses.  When dictating the parties' agreement to the Court, NVIDIA's own counsel noted that the agreement did not preclude BIAX "from coming back and saying you've pointed to such and such a document, but I don't believe that's enough, give me more on the following."  Transcript of February 11, 2010 hearing, at 18-19, attached as Exhibit 3.  The fact that the parties have properly met and conferred to seek resolution of their disputes does not relieve NVIDIA of its discovery obligations.

**B.     THE COURT SHOULD COMPEL NVIDIA TO PRODUCE FINANCIAL DOCUMENTS AND OTHER DAMAGES-RELATED DOCUMENTS PERTAINING TO ITS WORLD-WIDE SALES OF THE ACCUSED PRODUCTS.**

NVIDIA has further refused to produce any documents or information concerning sales other than sales in the United States.  *See*, *e.g.*, Ex. 2 at 2 (response to Request No. 29).  Again, this unilateral limitation of NVIDIA's discovery obligations is unwarranted.

Although BIAX will not be able to recover damages based on sales outside of the United States, information concerning such sales may well enter into BIAX's damages analysis and calculation.  For example, such information will enable BIAX to determine to what extent infringing chips were incorporated into products for sale back into the United States.  BIAX believes that Defendants orchestrated such indirect sales into the United States, which would support liability under theories of inducement or contributory infringement.  *See*, *e.g.*, *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379-80 (Fed.

7

Cir. 2005) (finding inducement of infringement as to products sold to Japan and resold to Japanese subsidiary); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001) (holding that competitor induced infringement by manufacturing computer chips in Singapore using patented method, for resale by purchaser into United States). This is sufficient basis to obtain discovery of overseas sales. *See Murata Mfg. Co. v. Bel Fuse, Inc.*, 422 F. Supp. 2d 934, 946 (N.D. Ill. 2006) (holding that plaintiff was entitled to discovery of foreign sales because it had pled a claim for inducement of infringement, and foreign sales are relevant to that claim).

Further, this information is relevant to the overall analysis of Defendants' sales. As Mr. Weinstein explained, "to accurately tabulate infringing Nvidia product sales, worldwide figures are a necessary foundation." *Id.*, ¶ 5. BIAX is entitled to such information to conduct its analysis. The Court should not allow Defendants to so impede BIAX's analysis at the discovery stage of the litigation.

### C. THE COURT SHOULD COMPEL NVIDIA TO PRODUCE FINANCIAL DOCUMENTS CREATED AND KEPT IN THE ORDINARY COURSE OF BUSINESS.

Even with respect to the sales of the Accused Products that NVIDIA *agrees* are relevant, NVIDIA has produced only summary documents created for purposes of this litigation. It has refused to produce the actual financial records that it created and maintained in the ordinary course of business.

In order to conduct its damages analysis and calculation, BIAX is entitled to the actual documents that NVIDIA maintains in the ordinary course of business that provide the detailed financial information it seeks. BIAX should not be forced to rely on summary documents created at counsel's behest showing only the information that *NVIDIA* believes is relevant.

Accordingly, BIAX respectfully requests that the Court compel NVIDIA to produce its responsive financial documents in the form in which they were created and maintained in the ordinary course of business.

D.  **THE COURT SHOULD COMPEL NVIDIA TO FULFILL ITS DISCOVERY OBLIGATIONS BY IDENTIFYING DOCUMENT CUSTODIANS, AND CONDUCTING AN ADEQUATE SEARCH AND PRODUCTION OF RECORDS FROM THESE DOCUMENT CUSTODIANS' HARD COPY AND ELECTRONIC FILES.**

In follow-up discussions with NVIDIA's counsel this past week in connection with BIAX's Interrogatory No. 36,[3] it has become clear that NVIDIA has not conducted any type of search of the electronic or hard copy files of the NVIDIA managers who possess the financial and marketing data sought by BIAX *since the beginning of this case*.[4] NVIDIA has further indicated that it will not commit to conducting any type of search of their individual electronic or hard copy records. The Federal Rules impose on parties in litigation "an affirmative duty to seek information reasonably available [to its] employees, agents and others subject to their control." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 626 (D. Colo. 2007). By refusing to even identify likely document custodians and conduct a reasonable search

---

[3]  Interrogatory No. 36 seeks the identification of Nvidia personnel whose files Nvidia has reviewed for relevant records, and the corresponding production (bates) numbers of those records. Nvidia's response indicates that "most" of its production has come from Nvidia's "PerForce" database, which Nvidia's counsel confirmed does not encompass emails or other electronic or hardcopy records of individual document custodians. For the non-technical Nvidia employees it identifies, Nvidia does not specifically indicate who these people are (i.e., their job titles) or what (if any) records have been produced from their individual files.

[4]  Notwithstanding Nvidia's commitment at the February 11, 2010 hearing to produce communications pertaining to the 2005 Sony/Nvidia Definitive Agreement – which forms the basis of Sony's use of Nvidia's infringing RSX chip in Sony's PlayStation 3 and VAIO computer – no such communications (internal or external) have been produced. As pointed out in BIAX's June 14 Motion, Nvidia's document production to-date has not included a single e-mail dealing with the business, financial or marketing considerations that went into the 2005 Definitive Agreement.

9

for their electronic and hard copy documents, NVIDIA has failed to comply with that obligation. *Id.*

BIAX is mindful of the burdens associated with discovery, and has indicated its willingness to limit the search to a discrete number of custodians, and come up with specific search terms for those custodians' electronic files. BIAX respectfully requests this Court's assistance in obtaining NVIDIA's identification of appropriate document custodians and its reasonable search of their electronic and hard copy records.

### E.     INDIVIDUAL DEFICIENCIES.

BIAX's discovery requests that are the subject of this motion each fall within one of several categories that bear directly on BIAX's reasonable royalty analysis under the guidelines established in *Georgia Pacific*. BIAX will discuss each of these categories, and the basis for its motion, below.

#### 1.     Financial Information Concerning the Sales of Accused Products.

Many of BIAX's requests directly seek financial documents and information concerning NVIDIA's sales of the Accused Products. *See* Exs. 1 and 2 at Int. No. 31 and Request Nos. 33, 43, 54, 55, 60, 61, and 78. These seek information concerning NVIDIA's sales, costs, revenues, and profits. This is the most fundamental financial information any company possesses, and is essential to BIAX's damages analysis and calculation. It is directly relevant to at least the eleventh factor set forth in *Georgia Pacific*, "the extent to which the infringer has made use of the invention … and any evidence probative of the value of that use." 318 F.Supp. at 1120. Quite simply, without this information, BIAX cannot calculate its damages.

As explained above, NVIDIA has produced only summary financial information regarding its sales of the Accused Product. That information does not include sales made before

the date this lawsuit was commenced, nor any sales made outside of the United States.  NVIDIA has informed BIAX that it will not produce any additional financial information, including any records that were made and kept in the ordinary course of business.  For the reasons set forth above, NVIDIA's production is insufficient.  Thus, BIAX requests that the Court compel NVIDIA to respond fully to BIAX's requests for documents and information concerning NVIDIA's sales of the Accused Products, including documents created in the ordinary course of business, such as "annual and quarterly reports, profit and loss statements, balance sheets, and statements of cash flow on a monthly, quarterly, and annual basis."  *See* Ex. 2 at 27 (Request No. 55).

### 2. Documents Concerning the Commercial Success of the Accused Products.

The success (or lack thereof) of the products covered by the patent-in-suit weighs heavily in the reasonable royalty analysis.  In addition to the "extent to which the infringer has made use of the invention [and the] value of that use," *Georgia Pacific* urges the fact finder to consider "the established profitability of the product made under the patent; its commercial success; and its current popularity."  318 F.Supp. at 1120 (factor 8).  Naturally, several of BIAX's requests seek information that pertains to the commercial success of NVIDIA's Accused Products:

| Request | Documents Sought |
|---------|------------------|
| 34 | Market share of the Accused Products |
| 35 | Impact of the sale of the Accused Products on NVIDIA's product portfolio and business strategy |
| 36 | Commercial success of the Accused Products |
| 37 | Market studies and consumer satisfaction surveys |
| 38 | Minutes of board and department meetings discussing the financial impact of sales of the Accused Products on profits and losses |

11

| Request | Documents Sought |
| --- | --- |
| 39 | Strategic plans, business plans, and planning documents |
| 56 | Studies of market share |
| 57 | Product profitability analysis |
| 58 | Comparisons of market share and prices to projections |
| 59 | Rate of return on NVIDIA's total business and the Accused Products |
| 66 | Demand for the Accused Products |
| 67 | Basis for and factors affecting demand |
| 79 | Studies of the benefits of the Accused Products over competitors |

Each of these requests seeks information relevant to the commercial success of the Accused Products, and therefore relevant to the *Georgia Pacific* analysis. NVIDIA has stated that it will produce certain documents responsive to Request No. 34, but to date has neither produced any documents nor told BIAX what specific documents it will produce. With respect to the remainder of the requests, NVIDIA has not agreed to make any production. Accordingly, BIAX respectfully requests that the Court compel NVIDIA to provide complete responses and produce all documents responsive to the requests listed above.

### 3.   Documents Concerning Pricing of the Accused Products.

BIAX directed several requests to documents concerning NVIDIA's pricing of the Accused Products. *See*, *e.g.*, Request Nos. 44 (pricing strategies), 45 (pricing and profit margins), 46 (factors in determining prices), 47 (projected and actual profit margins), 48 (discount programs), 49 (standard payment terms), 50 (analysis of market conditions and pricing), 51 (analysis of competition and pricing), 52 (analysis of customer groups and pricing),

12

and 53 (price versus quantity tradeoff). The relevance of this information to BIAX's damages analysis should be self evident: pricing is a component that determines revenue and profit, both of which are critical to any calculation of damages. In addition, however, the pricing information that BIAX seeks bears on the *Georgia Pacific* factors discussed above relating to the profitability of the products covered by the patent and the value of NVIDIA's use of the patented invention. Furthermore, the information will assist in the consideration of at least two other factors:

> 12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention …
>
> 13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

318 F.Supp. at 1120. By seeking information regarding the factors that determine NVIDIA's pricing of the Accused Products, BIAX seeks information that will help it determine how the invention affects pricing, thereby informing a determination of the value of the invention to NVIDIA.

NVIDIA has agreed to produce documents responsive to Request Nos. 48 and 49, but to date has neither produced the documents nor given BIAX any meaningful description of the documents it will produce. With respect to the other requests, NVIDIA has flatly refused to produce the requested information. Accordingly, BIAX requests that the Court compel NVIDIA to provide a complete response and production of documents concerning pricing, as requested in the above requests.

### 4. License Agreements and Licensing Policies.

BIAX requested documents that concern NVIDIA's policies and marketing programs to license patented technology from or to others. Ex. 2 at 33. In Request No. 86, BIAX further requested a specific license that BIAX entered into with Intel, based on NVIDIA's assertions in other court proceedings that the Intel license permits it (NVIDIA) to produce "Media and Communication Processor" (MCP) chipsets which "enable" NVIDIA's Accused GPUs to "work more effectively on computer systems that have Intel CPUs."[5]

Licenses and licensing policies are directly relevant to the *Georgia Pacific* analysis, which lists as a factor "the rates paid by the licensee for the use of other patents comparable to the patent in suit." 318 F.Supp. at 1120. Nevertheless, NVIDIA inappropriately limited the responsive documents that it would produce. NVIDIA agreed to produce "its outbound-only patent licenses related to GPU technology," but no other licenses. NVIDIA further refused to produce the Intel license agreement. There is no basis for NVIDIA's refusal to provide such license agreements. Further, NVIDIA notably failed to agree to produce the central documents requested by BIAX—documents concerning its patent licensing policies. That information is directly relevant to BIAX's reasonable royalty analysis; therefore, BIAX requests that the Court compel NVIDIA to respond in full.

### 5. Documents Concerning the Sale of Collateral Products.

The sixth factor listed in *Georgia Pacific* is the existence and extent of "convoyed sales:"

> 6. The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the

---

[5] *See* Exhibit 4 at ¶ 17 (Nvidia Counterclaim against Intel; *Intel v. Nvidia*, Case No. 4373-VCS; Delaware Chancery Court).

> invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

318 F.Supp. at 1120. In other words, the amount of the reasonable royalty may be affected by whether and to what extent NVIDIA's use of the patent technology increased its sales of related products that are not covered by the Patents-in-Suit.

BIAX naturally served a series of interrogatories and document requests seeking information directed to the existence and extent of such convoyed sales. For example, BIAX requested documents and information concerning the impact of the sales of the Accused Products on other, collateral products, and vice versa; the impact of the sales of such products on NVIDIA's profit margin and prices; and financial information concerning sales of the collateral products. Ex. 1 at Int. Nos. 29, 33, 34, and 35; Ex. 2 at Request Nos. 29, 30, 84, and 85. Despite the undisputable relevance of such information to BIAX's reasonable royalty analysis, NVIDIA objected to producing responsive documents. *Id.* BIAX respectfully requests that the Court compel NVIDIA to respond in full to its requests and produce all responsive documents.

**6.     Documents Concerning the Market and Customers of the Accused Products.**

BIAX sought from NVIDIA documents that describe the market in which the Accused Products are sold, as well as NVIDIA's customers and competitors. Ex. 2 at Request Nos. 40 and 42. NVIDIA has not agreed to produce responsive documents. Accordingly, BIAX respectfully requests that the Court compel NVIDIA to produce the responsive documents.

**7.     Marketing Documents.**

BIAX sought from NVIDIA documents concerning the marketing of the Accused Products. Ex. 2 at Request Nos. 32 and 41. NVIDIA agreed to produce certain responsive

marketing documents, but has not yet done so. BIAX therefore requests that the Court compel NVIDIA to produce responsive marketing documents.

### 8. Documents Concerning Potential Alternative Technologies to the Patented Invention.

BIAX sought documents concerning potential alternatives to the patented technologies. The requested documents include those that describe such alternate technologies, the costs of development of such technologies, the length of time they have been on the market, customer acceptance of such technologies, and analysis of whether such technologies infringe the Patents-in-Suit. Ex. 2 at Request Nos. 68-76. Such information is relevant for at least two reasons. First, it is information that BIAX will need should NVIDIA argue that there are non-infringing alternatives to the technology of the Patents-in-Suit. Second, it is essential information under the ninth factor listed in *Georgia Pacific*, which calls for the consideration of the "utility and advantages of the patent property over old modes or devices, if any, that had been used for working out similar results." 318 F.Supp. at 1120. NVIDIA has agreed to produce its responsive documents, but to date has not done so. Accordingly, BIAX requests that the Court compel NVIDIA to respond in full.

### 9. Documents Pertaining to NVIDIA Patent/License Litigations Involving the Same Accused GPUs at Issue in This Case (Request Nos. 88-98).

Finally, BIAX has sought NVIDIA's expert reports, deposition transcripts and videos, pleadings and the records NVIDIA has produced in three pieces of patent litigation involving the same GPUs which are Accused GPUs in this case: (1) *Intel v. Nvidia*, Case No. 4373-VCS Delaware Chancery Court; (2) *Rambus, Inc. v. Nvidia Corp.*, Case No. C-08-03343 SI (ND Cal.); and (3) ITC Investigation No. 337-TA-661 (Rambus ITC Investigation*)*.

As noted above, NVIDIA's dispute with Intel surrounds a license which permits NVIDIA to manufacture and sell a MCP chipset which incorporates or uses an Accused GPU. As such, this MCP chipset may very well be an infringing product itself, or at least subject to convoyed sales damages, and BIAX is entitled to discovery regarding the economic terms under which NVIDIA is permitted to manufacture and sell it (*i.e.*, the Nvidia/Intel license), as well as the positions taken and testimony provided by NVIDIA vis-à-vis the MCP chipset's use or incorporation of Accused GPUs.

Similarly, in both an ITC proceeding and federal court patent litigation, Rambus has alleged that the same Accused Nvidia GPUs infringe Rambus' patents, which broadly claim memory controller and interface technology.[6] Again, BIAX is entitled to discovery as to the positions taken and testimony provided by NVIDIA in connection with this technology vis-à-vis the Accused GPUs. By way of example only, certain of BIAX's patent claims pertain to the addressing of condition code registers and general registers, and other forms of memory. Information relating to the memory controllers which are part of the Accused GPUs is directly relevant to how these registers and memory are addressed, and thus, are directly relevant to whether the Accused GPUs infringe BIAX's patents.

## II. CONCLUSION

BIAX respectfully requests that the Court enter an Order compelling NVIDIA to produce the documents and information set forth in this motion.

---

[6] See Exhibit 5 (Rambus' Amended Complaint filed in *Rambus, Inc. v. Nvidia Corp.*, Case No. C-08-03343-SI (ND Cal.)).

Respectfully submitted this 25th day of June, 2010.

s/ Steven J. Merker
Tucker K. Trautman
Steven J. Merker
DORSEY & WHITNEY LLP
370 17th Street, Suite 4700
Denver, CO 80202-5647
Telephone: 303.629.3400
Facsimile:  303.629.3450
E-mail: trautman.tucker@dorsey.com
E-mail: merker.steve@dorsey.com

**ATTORNEYS FOR PLAINTIFF BIAX CORPORATION**

CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on June 25, 2010, I caused the foregoing document, titled PLAINTIFF'S MOTION TO COMPEL NVIDIA TO RESPOND TO PLAINTIFF'S THIRD SET OF INTERROGATORIES AND FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS, to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the email addresses listed on the attached service list.

s/ Steven J. Merker
Steven J. Merker
DORSEY & WHITNEY LLP
Attorneys for Plaintiff
370 17th Street, Suite 4700
Denver, CO 80202-5647

SERVICE LIST
*BIAX Corporation v. NVIDIA Corporation, et al.*
United States District Court, District of Colorado, Civil Action No. 09-cv-01257-PAB-MEH

| | |
|---|---|
| thomasch@ballardspahr.com<br>bernhardt@ballardspahr.com<br>**Roger P. Thomasch**<br>**Jon Bernhardt**<br>BALLARD SPAHR ANDREWS & INGERSOLL, LLP<br>1225 Seventeenth Street, Suite 2300<br>Denver, CO 80202-5596 | cottenweller@orrick.com<br>nchatterjee@orrick.com<br>uhui@orrick.com<br>rswope@orrick.com<br>**Christopher R. Ottenweller**<br>**I. Neel Chatterjee**<br>**Ulysses S. Hui**<br>**Richard S. Swope**<br>ORRICK, HERRINGTON & SUTCLIFFE, LLP<br>1000 Marsh Road<br>Menlo Park, CA 94025 |
| ddaybell@orrick.com<br>**Donald Daybell**<br>ORRICK, HERRINGTON & SUTCLIFFE, LLP<br>4 Park Plaza, Suite 1600<br>Irvine, CA 92614<br><br>*Attorneys for Defendant NVIDIA Corporation* | achachkes@orrick.com<br>**Alex V. Chachkes**<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>666 Fifth Avenue<br>New York, New York 10103-0001<br>*Attorneys for NVIDIA Corporation* |

| | |
|---|---|
| bfeatherstone@featherstonelaw.com<br>apetrie@featherstonelaw.com<br>**Bruce A. Featherstone**<br>**Andrew J. Petrie**<br>FEATHERSTONE PETRIE DESISTO LLP<br>600 17th Street, Suite 2400 South<br>Denver, CO 80202-5424<br><br>gregory.arovas@kirkland.com<br>**Gregory S. Arovas, P.C.**<br>KIRKLAND & ELLIS LLP<br>153 East 53rd Street<br>New York, NY 10022-4611 | laura.hepburn@kirkland.com<br>aaron.goodman@kirkland.com<br>**Laura A. Hepburn**<br>**Aaron B. Goodman**<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL 60654<br><br>john.edwards@kirkland.com<br>**John R. Edwards**<br>KIRKLAND & ELLIS LLP<br>950 Page Mill Road<br>Palo Alto, California 94304 |
| *Attorneys for Defendants Sony Computer Entertainment America, Inc. and Sony Electronics, Inc.* | |

4829-3673-0118\1