IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01257-PAB-MEH

BIAX CORPORATION,

     Plaintiff,

v.

NVIDIA CORPORATION,
SONY COMPUTER ENTERTAINMENT AMERICA, INC., and
SONY ELECTRONICS, INC.,

     Defendants.

---

## ORDER ON PLAINTIFF'S MOTIONS TO COMPEL

---

**Michael E. Hegarty, United States Magistrate Judge.**

     Pending before the Court is Plaintiff BIAX's Motion to Compel Responses to First Set of Interrogatories and Second Set of Requests for Production of Documents and Things [filed June 14, 2010; docket #226]; Plaintiff BIAX's Motion to Compel NVIDIA to Respond to Plaintiff's Third Set of Interrogatories and Fourth Set of Requests for Production of Documents and Things [filed June 25, 2010; docket #234]; and Plaintiff BIAX's Motion to Compel the Sony Defendants to Respond to Plaintiff's Third Set of Interrogatories and Fourth Set of Requests for Production of Documents and Things [filed June 25, 2010; docket #235]. These motions are referred to this Court for disposition. (Dockets ##227, 240.) The matters are fully briefed, and additional oral argument would not assist the Court. The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motions to compel as stated herein.

The Court held a motions hearing on July 14, 2010, to discuss these and other previously pending motions. (*See* docket #300.) The Court instructed the parties to meet and confer and identify the portions of Plaintiff's three motions to compel remaining for the Court to resolve. The parties filed a Joint Status Report on July 23, 2010, indicating the sections of Plaintiff's motions still subject to dispute. After review of the pleadings, the hearing transcript, and the joint status report, the Court orders as follows.

## Motion to Compel Responses to First Set of Interrogatories and Second Set of Requests for Production of Documents and Things (Docket #226)

The parties represent that sections A, C (Sony), G-2 and G-3 were resolved and sections B, C (Nvidia), D, E, and all sections of G except -2 and -3 remain disputed. (Docket #308 at 1.)

### I. *Section B: Identification of Responsive Documents*

Plaintiff requests the Court to order Defendants to "specify which of their documents are responsive to the individual interrogatories, instead of asserting that responsive information exists somewhere in the many of thousands of pages of documents produced." (Docket #226 at 2.) Plaintiff particularly objects to Nvidia's responses to Interrogatories No. 18 and 20 and Request for Production 27 and to Sony's responses to Interrogatories No. 15, 18, and 22, and Request for Production 27(a). (*Id*. at 3-4.)

Plaintiff represents that "Nvidia's response to Interrogatory 20 makes a useless blanket reference to Bates-stamped pages 1 to 8236 of its production." (*Id*. at 3.) In response, Nvidia represents that Interrogatory No. 20 requests a list of documents related to "non-infringement," whereas Interrogatory No. 27 applies to Nvidia's "non-infringement case on an element-by-element basis." (Docket #260 at 22.) Nvidia believes that its response to Interrogatory No. 27 satisfies the specificity which BIAX requests for Interrogatory No. 20. As to Interrogatory No. 18, Nvidia

asserts it supplemented its response. (*Id.*) The Court accepts Nvidia's representations, to which BIAX did not reply, and **DENIES** BIAX's motion in this respect.

Plaintiff BIAX contends that the Sony Defendants "responded to Interrogatory 15 with a general reference to over 20,000 pages of documents." (Docket #226 at 3.) In response, the Sony Defendants aver that they properly identified Bates ranges of responsive documents in certain cover letters, and in any event, have supplemented their interrogatory responses with the same. (Docket #259 at 4-5.) BIAX did not challenge this contention in its reply; thus, the Court **DENIES AS MOOT** this portion of BIAX's motion.

## II.    *Section C: Adequacy of Defendant Nvidia's Search for Requested Communications*[1]

Plaintiff BIAX originally directed this section to all Defendants but has since represented that the section is resolved as to the Sony Defendants. (*See* docket #308 at 1.) As to Defendant Nvidia, in its motion Plaintiff contends that Nvidia "has produced only 38 e-mails or other forms of electronic correspondence, totaling less than one hundred pages of documents out of over 100,000 total pages produced." (Docket #226 at 5.) Plaintiff believes that "it defies credibility to assume that no such communications exist." (*Id.*) Plaintiff argues that Nvidia must conduct a reasonable search and produce relevant documents, and it alleges that Nvidia has not done so, nor has it "identified the appropriate document custodians." (*Id.*)

In the motion to compel directed solely at Nvidia, BIAX asserts Nvidia refuses to completely answer Interrogatory No. 36 and refuses to "identify likely document custodians and conduct a reasonable search for their electronic and hard copy documents." (Docket #234 at 9-10.) BIAX offers "to limit the search to a discrete number of custodians, and come up with specific search terms

---

[1]This issue is also raised by BIAX in its Motion to Compel directed to Nvidia only, at Docket #234. The Court addresses both motions to compel in this section. (*See* docket #234 at 9-10.)

for those custodians' electronic files." (*Id*. at 10.) BIAX specifically addresses its request for "communications pertaining to the 2005 Sony/Nvidia Definitive Agreement." (*Id*. at 9 n.4.) BIAX alleges that Nvidia has not produced "a single e-mail dealing with the business, financial or marketing considerations that went into the 2005 Definitive Agreement." (*Id*.)

In response, Nvidia asserts that it "performed a reasonable search for, collection of, and production of, documents sufficient to cover the subject matters on which BIAX has sought legitimate discovery." (Docket #260 at 19.) Additionally, Nvidia emphasizes that a search of electronic files would cost "in the range of $70,000 per person or more." (*Id*.) As to discovery related to the 2005 Definitive Agreement, Nvidia explains that it searched the files of "(i) the lead contract negotiator for NVIDIA; and (ii) the lead technical person for NVIDIA on the deal; and (iii) the technical project manager." (*Id*.) Moreover, Nvidia states that the financial terms are within the agreement itself, which BIAX has in its possession, and it produced the presentations about RSX that it made to Sony after the agreement was concluded. (*Id*.)

In a brief reply, BIAX avers that "communications by NVIDIA to its customers and potential customers may well bear on NVIDIA's valuation and touting of the patented technology." (Docket #282 at 9.) BIAX contests Nvidia's "refusal to produce a 30(b)(6) witness on documents" and refers to an email exchange between counsel regarding "identify[ing] the custodian from whom [Nvidia] pulled/produced records," in satisfaction of responding to Interrogatory No. 36. (*Id*. (citing docket #282-5 at 2-3).)

During the motion hearing on July 14, 2010, Mr. Chachkes, counsel for Nvidia, represented that Nvidia is "in the process of producing, representative documents, marketing documents, a broad, broad cross-section, thousands of documents" related to communications with customers. (Docket #311 at 129.) Mr. Chachkes stated that Nvidia is producing the vice president of marketing

for a deposition, after having produced "representative marketing documents." (*Id*. at 130.)  Mr.

Chachkes also reiterated Nvidia's position that Nvidia's knowledge of the patent at issue and

Nvidia's marketing and financial information are "completely irrelevant to any issue in this

litigation." (*Id*. at 131.)

Section 271 of 35 U.S.C. defines "infringement of patent."  The statute explains how

"whoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes

the patent."  As BIAX brings two claims of patent infringement, it appears to the Court that evidence

related to marketing information, *i.e.* offers to sell, is relevant pursuant to the broad standard in Fed.

R. Civ. P. 26(b).  However, the Court finds Plaintiff's request for relief as to this section of its

motion less than clear.  The Court construes Plaintiff's motion as requesting a more complete

response to its Interrogatory No. 36 and as seeking identification of document custodians.  The Court

**GRANTS** this portion of BIAX's motion as follows:

1) After review of Interrogatory No. 36, the Court finds that Nvidia listed names of fourteen

individuals as persons from whom documents were collected.  (Docket #234-1 at 12.)  However,

Nvidia did not identify by Bates range the documents produced from these fourteen individuals'

files.  The Court believes that this information is relevant for purposes of authentication and

potential 30(b)(6) depositions and therefore orders Nvidia to identify the Bates ranges of documents

produced from the fourteen identified individuals' files, within ***fourteen calendar days*** of the date

of this order.

2) Additionally, within ***seven calendar days*** of the date of this order, the parties shall file

a Status Report to the Court, preferably jointly, but separately if necessary, representing the

following:

a) A proposed discrete number of document custodians and names of suggested custodians, as referred to by BIAX;

b) A proposed list of discrete search terms; and

c) A proposed cost-sharing agreement for the hefty cost of searching electronic files as represented by Nvidia, with an accompanying affidavit in support of the anticipated costs.[2]

## III.    *Section D: Adequacy of Sony Defendants' Supplementation of Production*

Plaintiff BIAX requests the Court to compel supplementation of its responses to Interrogatories Nos. 1, 3, 16, and 17.  (*See* docket #226-4 (Interrogatories and Responses).) Interrogatory No. 1 concerns identification of each GPU (graphics processing unit) "made, used, offered for sale, or sold in the United States" from January 1, 2003 through the present, "that includes, implements, uses or supports two or more Condition Code Registers."  (*Id*. at 2.)  In response, the Sony Defendants objected to the request but directed BIAX "to the Sony Products List produced on March 15, 2010." (*Id*. at 3.)  Interrogatory No. 3 requests the same information, except for "Accused Library" in the stead of "Condition Code Registers."  (*Id*. at 4.)  Sony again objected and referred BIAX to Nvidia's response to the same interrogatory.  (*Id*. at 5.)  In its response, Nvidia identified four families of GPU on which the Nvidia OpenGL extensions would run.  (Docket #226-2 at 6-7.)  Interrogatory No. 16 "seeks information regarding products of parties to whom [the Sony Defendants] sell the accused chips."  (*See* docket #226 at 10; docket #226-4 at 14.)  Sony objected and referred BIAX "to the Sony Products List produced on March 15, 2010."  (Docket #226-4 at

---

[2]In consideration of the expense of searching electronic files, the Court believes justice requires cost sharing.  Also informing this decision is the amount of documentation already produced by Nvidia in this litigation.  If BIAX believes more production best serves its interest, it should be prepared to bear an amount of that cost, if not potentially the entire cost.

15.) Interrogatory No. 17 asks for identification of one Sony manager and three Sony employees "most knowledgeable about" a list of activities within Sony. (*Id.*) Sony objected to this interrogatory and listed five individuals, the individuals' titles, and their areas of knowledge. (*Id.* at 16-17.)

BIAX argues that the Sony Defendants, in responding to these four interrogatories, limited the scope of their response to products incorporating Nvidia chips or technology. (Docket #226 at 6.) BIAX further states that proper meet and conferral "does not relieve Sony (or Nvidia) of their discovery obligations." (*Id.*) However, an actual request for relief is less than clear, and BIAX does not support its contention that the Sony Defendants are obligated to produce discovery beyond the accused products with case law or a factual relevance analysis.

The Sony Defendants argue that "BIAX's requests for discovery regarding Sony products that are not at issue in this case are overbroad and without merit." (Docket #259 at 6.) The Sony Defendants rely on case law from other jurisdictions for the contention that discovery requests regarding unaccused products should be denied in instances where the requesting party fails to present evidence that a reasonable basis for infringement claims exist. (*See id.* at 6-7.) In other words, the requesting party should not be allowed to engage in a fishing expedition without making a proper showing consistent with the Federal Rules, notably Rules 26(g) and 11(b). (*See id.* at 7.) The Court agrees and **DENIES** this portion of BIAX's motion. Without a more specific showing of need or relevance by Plaintiff BIAX,[3] or some substantive deficiency on the part of the Sony Defendants, the Court concludes that the Sony Defendants adequately responded to Interrogatories Nos. 1, 3, 16, and 17.

---

[3]BIAX briefly addresses this point in its reply at docket #281, but provides no compelling legal authority or factual relevance analysis to sway the Court from its conclusion. (*See* docket #281 at 7-8.)

**IV.     *Section E: Scope of Production of Defendants' Financial Information***

Plaintiff BIAX believes Defendants improperly restricted their scope of production in response to its requests for financial discovery.  (Docket #226 at 7.)  BIAX challenges Defendants' production of financial records because the records are dated after May 29, 2009, reflect only direct sales within the United States, and provide information only on net sales and net revenues.  (*Id*.)  BIAX asks the Court to compel documents dated prior to May 29, 2009, which is the date this case was filed; records of world-wide sales, not just direct sales within the United States; and financial information more comprehensive than net sales and net revenues.  (*See id*. at 7-10.)  BIAX's motions at Dockets ##234 and 235 more thoroughly address this portion of the discovery dispute; thus, the Court directs the parties to pages 12-36 of this order for its order applicable to this Section E of Docket #226.

**V.     *Section G: Interrogatories No. 16, 22, 23, 24***

A.     <u>Interrogatory No. 16 - Defendant Nvidia</u>

BIAX requests the Court to order Nvidia to provide "information regarding products of parties to whom Nvidia sells the accused chips."  (Docket #226 at 10.)  BIAX asserts that, "[t]o the extent Nvidia has knowledge of the products in which its customers incorporate its chips (and it is impossible to credit that it has none), it must provide this information."  (*Id*.)

Nvidia represents that it gave BIAX a list of its customers, in that the financial spreadsheets already produced "itemize to whom each sale was made."  (Docket #260 at 23.)  Nvidia reiterates its contention that Plaintiff BIAX has no indirect infringement case and is thus not entitled to the discovery sought by this interrogatory.  (*Id*.)

The Court **DENIES WITHOUT PREJUDICE** this section of BIAX's motion.  In the Court's analysis below on pages 14-17 of this order regarding worldwide sales information, the

Court directs Plaintiff BIAX to supplement its response to Defendants' Interrogatory 1(d) concerning identification of direct infringement factual contentions. If Plaintiff BIAX adequately identifies third party direct infringers, consistent with its allegations leading to its request for worldwide sales figures (and a more detailed list of products by Nvidia's customers), Defendants are to produce their responsive worldwide sales financial information to BIAX. Similarly, as to this interrogatory, the Court finds that at this time of the litigation, the financial spreadsheets should adequately provide information regarding Nvidia's customers to BIAX. However, if BIAX properly supplements its response to Defendants' Interrogatory 1(d) and can provide an adequate factual basis for requesting more detailed discovery regarding Nvidia's customers' products, BIAX may re-file its request identifying specific information for disclosure, consistent with D.C. Colo. LCivR 37.1.

      <u>B.</u>    <u>Interrogatory No. 22 - All Defendants</u>

BIAX "seeks license agreements covering any of the Playstation products or other accused products." (Docket #226 at 10-11.) BIAX requests the Court to compel this information in its other two motions, more fully addressed below. As stated on pages 23-26 of this order, the Court **GRANTS IN PART** and **DENIES IN PART** this request.

      <u>C.</u>    <u>Interrogatories No. 23 and 24 - Sony Defendants</u>

Plaintiff BIAX requests the Court to compel production of the Sony Defendants' "identification of and financial information relating to games developed for or capable of running on any accused product or accused GPU, as well as the identification of Sony's game developers and their developer agreements." (Docket #226 at 11.) BIAX believes this information is relevant to both its liability and damages claims, "because the games may directly infringe by their use of infringing code sequences," and "sales of games give rise to damages as convoyed sales under the entire market value rule, since the games are functionally related to the infringing game systems

using Nvidia chips." (*Id.*)  In addition to compelling responses to these interrogatories, BIAX seeks the Court to order Sony "to provide BIAX's software expert a meaningful opportunity to examine and analyze the source code of games which BIAX, not Sony determines is needed." (*Id.* at 11-12.)

The Sony Defendants cite to *Micro Motion, Inc. v. Kane Steel Co., Inc.*, for the proposition that "discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." 894 F.2d 1318, 1327 (Fed. Cir. 1990) (emphasis in original).  Sony asserts that these interrogatories "demand[ ] and array of burdensome discovery . . . for hundreds of PS3 games," and BIAX improperly bases its requests on "nothing more than speculation." (Docket #259 at 20.)  Moreover, Sony attests it "does not even have possession of the third party source code BIAX seeks." (*Id.*)

At the July 14, 2010 motions hearing, Counsel for Sony, Mr. Taylor, informed the Court that BIAX served twenty-two subpoenas on game developers of PS3 games, which are not Sony entities. Mr. Taylor represented that the subpoenas "ask for all the financial information related to these games, internal financial information from these entities, [and] they request all communications between Sony and each of these entities." (Docket #311 at 152.)  Mr. Taylor emphasized that, insofar as the Sony Defendants, the games have not been accused of infringement.  Mr. Taylor explained how creation of the games utilizes a single condition code register; in this matter, the feature that BIAX accuses is addressable multiple condition code registers, which are not used in the games. (*Id.* at 153.)  Additionally, Mr. Taylor attested that Sony has offered to BIAX the sixteen games that Sony has in its possession, custody or control, for BIAX's review. (*Id.* at 155.)

After further questioning by the Court, Counsel for BIAX clarified that its purpose in seeking this information is finding out a certain level of convoyed sales, namely "the level of revenue that Sony gets from its games because their whole purpose in developing and selling a PS3, it's a game

sales device. That's what it is." (Docket #311 at 167.) Mr. Taylor retorted that BIAX still has not demonstrated "a scintilla of evidence showing the link under a convoyed sales theory . . . between the patented feature and these games." (*Id*.) Mr. Taylor contends that BIAX should first establish evidence of a valid claim before seeking such broad and burdensome discovery. (*Id*.)

As the Court alluded to at the July 14 hearing, revenue information from any particular licensee or subcontractor should be readily available, as related to profits obtained by Sony through the sale of games for use by the PS3. (*See* docket #311 at 168-69.) The Court mentioned that, as a method of quelling some of the burden described by Sony, BIAX could reimburse Sony for the costs of this discovery. The Court continues to believe that this is a just resolution of this dispute and is consistent with the Court's holding below regarding Sony's production of information regarding convoyed sales.

The Court **GRANTS** BIAX's motion as follows: Sony must produce its financial information relating to games developed for or capable of running on any accused product or accused GPU within ***fourteen calendar days*** of the date of this order. BIAX will bear the cost of this production. Sony shall contemporaneously produce a good-faith billing statement limited to this production only. BIAX may challenge the billing statement, if necessary, through a motion before this Court. Regarding access to the PS3 games, the Court believes that BIAX has properly attempted to acquire this discovery through the issuance of the subpoenas. However, Sony represents it has sixteen games in its possession and control. The Court believes Sony's suggested sampling, in addition to the discovery gained through the third-party subpoenas, is appropriate here. BIAX may choose three of the sixteen games, and Sony may choose another three of the sixteen, for a total of six games accessible to BIAX's expert for code review, subject to the governing protective order in this matter. The code review shall be completed ***before the close of fact discovery***.

**<u>Motion to Compel NVIDIA to Respond to Plaintiff's Third Set of Interrogatories and</u>**
**<u>Fourth Set of Requests for Production of Documents and Things (Docket #234)</u>**

The parties represent that they were unable to resolve any part of this motion.  (*See* docket #308 at 2.)  This motion focuses on Plaintiff's ability to "conduct its reasonable royalty analysis and prepare its damages case for trial."  (Docket #234 at 3.)  Plaintiff requests the Court to compel Defendant Nvidia to produce:

I.      Damages-related information and documents prior to May 29, 2009 (Section A);

II.      Damages-related information and documents concerning world-wide sales of its accused products (Section B);

III.      Financial documents as created in the ordinary course of business (not summary documents created for purposes of this litigation) (Section C);

IV.      Additional information that is relevant to BIAX's reasonable royalty analysis (Section E) (financial information concerning the sales of accused products, documents concerning the commercial success of accused products, documents concerning pricing of accused products, license agreements and licensing policies, documents concerning the sale of collateral products, documents concerning the market and customers of the accused products, marketing documents, documents concerning potential alternative technologies to the patented invention, documents pertaining to NVIDIA patent/license litigations involving the same accused GPUs at issue in this matter).

(*See* docket #234 at 4-5.)  The Court ruled on the dispute stated in Section D of this motion at Docket #234, regarding identification of document custodians, in its adjudication of Section C of the motion at Docket #226, in pages 3-6 of this order.  The Court addresses each remaining area of contention regarding production of financial information in turn.

First, the Court restates the foundation of BIAX's assertions regarding its damages case.  "Upon a showing of infringement, a patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the

infringer.'" *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010) (quoting 35 U.S.C. § 284 (2006)). "Two alternative categories of infringement compensation are the patentee's lost profits and the reasonable royalty he would have received through arms-length bargaining." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

In this matter, BIAX seeks to recover a reasonable royalty on the sales of Defendants' alleged infringement products. (*See* docket #234 at 2; docket #235 at 2.) BIAX explains how "[a] reasonable royalty is the amount that would have been set in a hypothetical negotiation between the infringer and the patent owner at the beginning of the infringement period." (Docket #234 at 2 (citing *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (*en banc*)).) BIAX represents that a "list of considerations called the *Georgia Pacific* factors" informs the fact finder's determination of the royalty figure. (*Id.* (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).) *See also City of Aurora, Colo. v. PS Sys., Inc.*, No. 07-cv-02371-PAB-BNB, 2010 WL 2574042, at *9 (D. Colo. June 25, 2010) (explaining how "[c]ourts typically consult the 'comprehensive (but unprioritized and often overlapping) list of relevant factors for a reasonable royalty calculation [that] appears in *Georgia-Pacific* . . . .'").

BIAX quotes the following six of the fifteen *Georgia-Pacific* factors (see docket #234 at 3):

1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.
* * *
6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.
* * *
8. The established profitability of the product made under the patent; its commercial success; and its current popularity.
* * *

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

\* \* \*

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

318 F. Supp. 1116 at 1120.

Defendant Nvidia, at the hearing on July 14, 2010, countered BIAX's reliance on *Georgia-Pacific*, emphasizing that *Georgia-Pacific* is a non-binding district court case, and that pursuant to the *Georgia-Pacific* reasoning, the parties should be limited to evaluating a hypothetical license negotiation in 2004, which is when the alleged infringement commenced. (Docket #311 at 117.) Counsel for Nvidia stated that the fifteen factors enumerated in *Georgia-Pacific* must be evaluated in the frame of reference existing at the time of the alleged infringing product's introduction to the market. (*Id*. at 118.) The Sony Defendants also contest BIAX's characterization and application of the *Georgia-Pacific* factors to the facts of this lawsuit. (*See* docket #259 at 12 (further analyzed below).)

I.      *Section A: Damages-Related Information and Documents Prior to May 29, 2009*

Plaintiff BIAX admitted, as to Defendant Nvidia only, that it is not entitled to damages for any activities, including the RSX graphics processing unit product, prior to the filing of its complaint on May 29, 2009. (*See* docket #347 at 2.) In light of this response to Defendant Nvidia's Request for Admission, BIAX's motion is **DENIED AS MOOT** as to Defendant Nvidia.

II.     *Section B: Damages-Related Information and Documents Concerning World-Wide Sales of its Accused Products*

Plaintiff BIAX asserts that even though it "will not be able to recover damages based on sales outside of the United States," it is entitled to information concerning worldwide sales in order "to determine to what extent infringing chips were incorporated into products for sale back into the

United States." (Docket #234 at 7.) "BIAX believes that Defendants orchestrated such indirect sales into the United States, which would support liability under theories of inducement or contributory infringement." (*Id*.) During the motions hearing on July 14, 2010, counsel for BIAX averred that BIAX knows "with respect to NVIDIA [that] over 80 percent of their sales are outside the U.S. to companies who then turn around, take those chips, install them into products, and then import them back into the United States." (Docket #311 at 90.)

In response, Nvidia contends that "[i]t is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country." (Docket #260 at 10 (citing *e.g., Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007)).) Notably, in the motions hearing on July 14, 2010, counsel for Nvidia represented to the Court that BIAX has not brought any claim of inducement or contributory infringement "because [it hasn't] one, made a contention with respect to it, and two, [hasn't] complied with discovery on it." (Docket #311 at 123.) Furthermore, counsel for Nvidia stated that it has given BIAX "reams and reams of sales data" arising from 1) Nvidia making the accused product in the United States and selling the accused product in the United States, and 2) making the accused product overseas and importing it for sale into the United States. (*Id*.) As to making the product overseas and then selling it overseas, which are the figures BIAX now requests, Nvidia asserts it is not required to produce "manufactures and sales overseas that have no contact with the United States." (*Id*.) Nvidia contends case law indicates that BIAX must first prove that "there is a third-party direct infringement for which Nvidia is indirectly responsible," to demonstrate entitlement to worldwide financial information. (Docket #260 (citing *RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1267-68 (Fed. Cir. 2003)).)

BIAX moves to compel the same worldwide sales information from the Sony Defendants. (*See* docket #235 at 7.) The Sony Defendants represent that Sony "is not aware of any instances where PS3 consoles or VAIO computers sold to third parties outside the United States are re-sold in the United States, and Sony certainly would not authorize or orchestrate such a resale." (Docket #259 at 13.) Thus, the Sony Defendants contend that BIAX's assertion that Sony orchestrated indirect sales into the United States "is nothing more than groundless speculation and does not support its discovery requests." (*Id*. at 14.)

Plaintiff BIAX pled theories of "infringement, inducement of infringement, and contributory infringement" against Nvidia and the Sony Defendants. (*See* Am. Compl., docket #29 at 5, 6.) Nvidia, in its response to this motion to compel, explains that it and the Sony Defendants submitted joint interrogatories to BIAX, which included a request for more specific indirect infringement allegations, as alluded to by BIAX in its Amended Complaint. (*See* docket #260 at 11; *see also* docket #259 at 13-14.) Nvidia cites to a hearing before his Court in March 2010, when the Court discussed with the parties BIAX's supplementation of its response to the interrogatory inquiring about indirect infringement. (*See* docket #260 at 11.) At that hearing, Counsel for BIAX agreed to supplement its answer to interrogatory 1(d) "to state with specificity what are the allegedly directly infringing products, who's directly infringing, and then who is indirectly infringing and with specificity why that party is responsible for indirect infringement." (*Id*.) Nvidia informs the Court that BIAX has not supplemented its response, as discussed on the record. (*Id*. at 11, 12.)

After consideration of the cited case law and the parties' factual analyses, the Court believes that without an adequate explanation of the facts and evidence supporting BIAX's stated allegations of indirect infringement and inducement, an order compelling Defendants to produce responsive worldwide sales financial information would be more akin to the aforementioned fishing expedition.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** this portion of BIAX's motion, as to all Defendants, as follows: Plaintiff BIAX must supplement its response to Defendants' Interrogatory 1(d), requesting "identification of any direct infringement and a description of the acts of the alleged direct infringer that contribute to or are inducing that direct infringement. . . . [and] the role of each such party in the direct infringement." (Docket #264-5 at 3-4.) If Plaintiff BIAX adequately identifies third party direct infringers, consistent with its allegations leading to its request for worldwide sales figures, within *seven calendar days* of this order, Defendants shall, in turn, produce their responsive worldwide sales financial information to BIAX within *fourteen calendar days* of receiving BIAX's supplementation.

## III. *Section C: Financial Documents as Created in the Ordinary Course of Business*

Plaintiff BIAX contends that the Sony Defendants and Defendant Nvidia "ha[ve] produced only summary documents created for purposes of this litigation." (Docket #234 at 8; docket #235 at 9.) BIAX asserts that the Sony Defendants have produced "only five pages of documents . . . because Sony refuses to produce the actual financial records that show the information BIAX seeks, regarding sales, costs, and profits." (Docket #235 at 9.) BIAX requests the Court to order all Defendants to produce the "responsive financial documents in the form in which they were created and maintained in the ordinary course of business." (Docket #234 at 8-9; docket #235 at 9.)

In response, Defendant Nvidia represents that BIAX's contention is false as to Defendant Nvidia, because Nvidia produced "the raw data from its databases created and kept in the ordinary course of business." (Docket #260 at 14.) Nvidia attests that the raw data produced "contains potentially relevant sales, including details of the sales order number, part number, customer name, end-customer name, invoice number, ship-to name, customer type, product identifier, product type, product family, product business unit, quantity, amount of sale, unit price, any rebate, cost per unit,

total cost, invoice date, and much more." (*Id.*)

In its reply, BIAX simply restates its demand for "actual financial records," but does not provide the Court with anything other than this conclusory statement. The Court finds BIAX fails to refute Nvidia's representation that it has indeed produced "raw data from its databases created and kept in the ordinary corse of business." Accordingly, the Court **DENIES** this portion of BIAX's motion as to Defendant Nvidia.

Regarding the Sony Defendants, Sony explains that it "has already provided unit sales and revenue information, as agreed during the February 11, 2010 hearing." (Docket #259 at 14.) Sony represents that, regarding unit sales and revenue information as well as cost and profit information, "[t]hese records are maintained by Sony in the ordinary course of business in electronic databases, and the charts provided to BIAX are the outputs of these same databases." (*Id.*) Sony states that it "has agreed to update the charts with the US costs and profits information that BIAX subsequently requested." (*Id.* at 15.) Sony contends that should these charts prove deficient, BIAX "is capable of identifying specific additional information to request," and "to the extent BIAX seeks confirmation of the accuracy of the charts provided by Sony, it can explore this topic during appropriate depositions." (*Id.*)

Again, BIAX in its reply simply restates its demand for "actual financial records." (Docket #281 at 7.) In light of BIAX's conclusory allegations weighed against Sony's representations, the Court finds reasonable the Sony Defendants' suggestion that BIAX may later reissue its request with more specificity and may also investigate the accuracy of the charts produced by the financial databases in an appropriate deposition. Accordingly, the Court **DENIES WITHOUT PREJUDICE** this portion of BIAX's motion as to the Sony Defendants. After further review of the produced financial information and perhaps after a 30(b)(6) deposition regarding Sony's financial information,

BIAX may re-file its request identifying specific information for disclosure, if necessary, consistent with D.C. Colo. LCivR 37.1.

## IV. *Section E: Additional Information that is Relevant to BIAX's Reasonable Royalty Analysis*

BIAX seeks the same information from Defendant Nvidia and the Sony Defendants, with the exception of subsection I, stated below. Thus, the Court evaluates each request as to all Defendants in turn.

### A. Financial Information Concerning the Sales of Accused Products

This request essentially restates BIAX's arguments regarding the production of summary financial information, production of financial information before May 29, 2009, and information regarding sales made outside of the United States. (*See* docket #234 at 10-11; docket #235 at 11.) As to all Defendants, the Court directs BIAX to its findings and orders stated within pages 12-36 of this order.

### B. Documents Concerning the Commercial Success of Accused Products

BIAX requests the Court to compel complete responses by the Defendants to its Requests for Production Nos. 34, 35, 36, 37, 38, 39, 56, 57, 58, 59, 66, 67, 79. (Docket #234 at 11-12; docket #235 at 12.) BIAX contends, without explanation, that these thirteen categories of requests for production are relevant to the eighth *Georgia-Pacific* factor, "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity." (*See id.*)

BIAX avers that Defendant Nvidia stated it would produce documents responsive to Request No. 34 but has not, nor has Nvidia informed BIAX of the documents it intends to produce. (Docket #234 at 12.) In response, Defendant Nvidia attests it has produced material related to "actual price, unit price, average selling price, rebates, cost of goods sold, gross margin, gross revenue, operating expenses, and net revenue." (Docket #260 at 14.) BIAX does not refute this contention in its reply.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** this portion of BIAX's motion as to Defendant Nvidia, as follows. The motion is **granted** to the extent that Nvidia must produce documents responsive to Request No. 34 as represented, within ***ten calendar days*** of this order. This portion of the motion is **denied** in all other respects.

BIAX asserts that the Sony Defendants stated it would "produce documents responsive to Requests Nos. 36, 37, and 79, but to date has neither produced any documents nor told BIAX what documents it will produce." (Docket #235 at 13.) In the Sony Defendants' response, Sony explains how "*Georgia-Pacific* contemplates an analysis of 'economic factors that normally prudent businessmen would, under similar circumstances, take into consideration in negotiating the hypothetical license.'" (Docket #259 at 15-16 (citing 318 F. Supp. at 1121).) Sony believes it has produced responsive documents containing this information. Sony represents it "agreed to produce cost and profit data, and is currently collecting such data for sales through the end of June. Sony is also in the process of producing business planning and marketing materials." (*Id.* at 16.) Sony states that "[t]hese materials reflect the financial and marketing information considered by Sony in running its business and likely provide the best source of information subject to consideration by reasonable business people." (*Id.*) Sony again suggests that BIAX first review the produced materials, and then determine what further information it believes is necessary to evaluate what constitutes a reasonable royalty pursuant to the *Georgia-Pacific* analysis. (*Id.*)

The Court agrees and **GRANTS IN PART** and **DENIES WITHOUT PREJUDICE IN PART** this portion of BIAX's motion as to the Sony Defendants, as follows. The motion is **granted** to the extent that the Sony Defendants shall produce the cost and profit data and business planning and marketing materials as represented within ***ten calendar days*** of this order. The motion is **denied without prejudice** to the extent that, after full review of the produced materials, if BIAX in good

faith believes it requires further discovery, it may re-file its request at that time and submit a motion consistent with the requirements of D.C. Colo. LCivR 37.1.

       C.      <u>Documents Concerning Pricing of Accused Products</u>

BIAX seeks the Court to compel responses to Requests for Production Nos. 44 through 53. (Docket #234 at 12-13; docket #235 at 13.) BIAX asserts that these requests implicate the *Georgia-Pacific* factors 12 and 13:

> 12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.
>
> 13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(*Id*. (citing 318 F. Supp. at 1120).) BIAX argues that the pricing information is relevant to its damages analysis because "pricing is a component that determines revenue and profit, both of which are critical to any calculation of damages." (*Id*.) BIAX represents that Nvidia had agreed to produce documents responsive to Requests Nos. 48 and 49, but has not done so. (*Id*.)

In response, Defendant Nvidia contends that only "*actual* price" is relevant to profitability, and Nvidia has produced discovery related to actual pricing. (Docket #260 at 14 (emphasis in original).) Nvidia represents that "there is no information related to the 'portion of the profit or the selling price . . . to allow for the use of the invention,'" and "BIAX is at liberty to confirm this via deposition." (*Id*. at 15 (emphasis in original).) Similarly, Nvidia describes how BIAX knows that Nvidia "attributes *nothing* to what BIAX claims to be its invention," thus BIAX's demands for discovery related to "the portion of the realizable profit that should be credited to the invention as distinguished from the non-patented elements" has been answered. (*Id*. (emphasis in original).)

BIAX replied to Nvidia's contentions regarding pricing discovery requests and emphasized that Nvidia refuses to produce "discovery that goes to the heart of a reasonable royalty damages analysis: the documents that describe the *manner in which NVIDIA sets its prices*, which may well reveal the value NVIDIA places on the patented technology."  (Docket #282 at 7 (emphasis in original).)  Thus, BIAX seeks "requests seeking NVIDIA pricing strategies (Request No. 44), the factors in determining price (46), the projected profit margins (47), NVIDIA's analysis of market conditions and pricing (51), NVIDIA's analysis of customer groups and pricing (52), and information on the price versus quantity tradeoff (53)."  (*Id.*)  As to Nvidia's assertion that it "attributes *nothing* to what BIAX claims to be its invention," BIAX cites to Bates-numbered documents describing the patented technology as advantageous and performance-enhancing.  (*Id.* at 8.)  BIAX believes that this evidence demonstrates that Nvidia should respond with "additional information concerning the value NVIDIA assigns to the patented technology."  (*Id.*)

The Court **GRANTS IN PART** and **DENIES IN PART** this portion of BIAX's motion as to Defendant Nvidia as follows.  The motion is **granted** to the extent that Nvidia shall produce responsive documents to Requests Nos. 48 and 49 as represented within ***ten calendar days*** of this order.  The motion is further **granted** as to Request Nos. 44 (pricing strategies), 45 (pricing and profit margins), 46 (factors in determining prices), 47 (projected and actual profit margins), 50 (analysis of market conditions and pricing), and 51 (analysis of competition and pricing), although limited to the time frame applicable to a reasonable royalty analysis under *Georgia-Pacific*, that is, as stated by BIAX, "the beginning of the infringement period."  (Docket #234 at 2 (citing *Rite-Hite Corp.*, 56 F.3d at 1554).)  The motion is **denied** as to Requests Nos. 51 and 52, as the relevance of these requests is not readily apparent nor addressed with any specificity by either party.

The Sony Defendants did not specifically address BIAX's requests for pricing information. (*See* docket #259.) The Sony Defendants argued that Sony had produced "the financial and marketing information considered by Sony in running its business and likely provide the best source of information subject to consideration by reasonable business people in a hypothetical negotiation under a *Georgia-Pacific* analysis." (Docket #259 at 16.) BIAX does not refute this contention in its reply. (*See* docket #281.) The Court construes this portion of BIAX's motion **abandoned** as to the Sony Defendants, thus this portion of BIAX's motion is **DENIED**.

D.    License Agreements and Licensing Policies

Plaintiff BIAX requests the Court to compel licenses and licensing policies from Defendant Nvidia and the Sony Defendants. (Docket #234 at 14; docket #235 at 14.) BIAX seeks "documents that concern [Defendants'] policies and marketing programs to license patented technology from or to others." Specifically from Nvidia, BIAX seeks the Intel license agreement, because it believes that in other court proceedings, Nvidia represented that the accused product in this matter works "more effectively on computer systems that have Intel CPUs." (Docket #234 at 14.) BIAX believes that license policies and agreements are directly relevant under *Georgia-Pacific* as to evaluating "the rates paid by the licensee for the use of other patents comparable to the patent in suit." (*Id.* (citing 318 F. Supp. at 1120); *see also* docket #235 at 14.)

BIAX represents that Nvidia "agreed to produce 'its outbound-only patent licenses related to GPU technology,' but no other licenses," and did not produce the Intel license agreement. (Docket #234 at 14.) In response, Nvidia attests that although it has a privileged patent policy, "[i]t has no written licensing policy." (Docket #260 at 16.) Nvidia also represents that it has produced "all its in-bound and out-bound licenses covering GPU technology. The dispute, then, is limited to cross-licenses." (*Id.*) Regarding cross-licenses, Nvidia claims that the Federal Circuit "has

repeatedly found these sorts of licenses irrelevant to the damages analysis." (*Id.* (citing *Lucent Techs., Inc.*, 580 F.3d at 1327).) Nvidia cited to *ResQNet.com, Inc. v. Lansa, Inc.*, stating the Federal Circuit's admonition that it "has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies *other* than the patent in suit." 594 F.3d at 869 (emphasis in original).

In reply, BIAX contends that *ResQNet.com* and *Lucent Technologies* do not address the discoverability of cross-licenses, but "only discuss the circumstances under which licenses may properly be considered in a reasonable royalty analysis." (Docket #282 at 3.) BIAX cites to *Fresenius Medical Care Holding Inc. v. Baxter International, Inc.*, 224 F.R.D. 644, 653-54 (N.D. Cal. 2004), for the proposition that "courts that consider the *discoverability* of licenses on comparable technologies hold them to be discoverable." (*Id.* at 4 (emphasis in original).) BIAX asserts that under the broad standard for relevance, the Court should compel Nvidia to produce "all cross-licenses and licenses to comparable technology." (*Id.*)

Concerning the Sony Defendants, BIAX represents that the Sony Defendants agreed to produce "in-bound and out-bound patent licenses covering GPU technology" but would not produce "cross-licenses, and excluded other relevant license agreements on comparable technologies." (Docket #235 at 14.) BIAX further emphasized that Sony declined to produce "the central documents requested by BIAX – documents concerning its patent licensing policies." (*Id.*)

The Sony Defendants represent that the only remaining issue as to their production regarding licensing is the production of cross-licenses. (Docket #259 at 19.) Sony, like Nvidia, relies on the Federal Circuit's evaluations of the *Georgia-Pacific* factors in *ResQNet.com* and *Lucent Technologies*. (*Id.* at 19-20.) Sony represents that it is "in the process of collecting and producing [licenses and settlements relating to GPU technology]." (*Id.* at 20.) Sony contends that cross-

licenses are not relevant to the case and would not support a damages award, because the cross-licenses are not linked to the patents in suit. (*Id*.)

BIAX's reply mirrors its reply submitted regarding Defendant Nvidia. (*See* docket #281 at 4-5.) BIAX further argues that because Sony did not address its request for patent licensing policies, thus the Court should compel production of the policies. (*Id*. at 5.)

The Court finds *ResQNet.com* most instructive on the question of cross-licenses. The Federal Circuit, in *ResQNet.com*, examined how an expert in that matter began an evaluation for a hypothetical negotiation pursuant to *Georgia-Pacific* with the first factor, which "requires considering past and present royalties received by the patentee 'for the licensing of the *patent in suit,* proving or tending to prove an established royalty.'" 594 F.3d at 869 (citing 318 F. Supp at 1120) (emphasis in original). The *ResQNet.com* Court explained, "[b]y its terms, this factor considers only past and present licenses to the actual patent and the actual claims in litigation." *Id*. Although the Court in the instant dispute evaluates the twelfth *Georgia-Pacific* factor, the first is certainly informative. The *ResQNet.com* Court explained how an evaluating court "must consider licenses that are commensurate with what the defendant has appropriated. If not, a prevailing plaintiff would be free to inflate the reasonable royalty analysis with conveniently selected licenses without an economic or other link to the technology in question." *Id*. at 872.

BIAX cites *Fresenius Medical Care Holding* in support of its position, but *Fresenius* is distinguishable. First, *Fresenius* does not address cross-licenses, it concerned "licenses for 'non-active' products." 224 F.R.D. at 653. Second, in *Fresenius*, the defendant claimed it had never licensed the patents-in-suit, thus licenses regarding comparable products were particularly important for the plaintiff to consider in forming its damages claim. *Id*.

Considering the reasoning in *ResQNet.com* compared with the determination in *Fresenius*, it appears that the Court that the relevance of cross-licenses and licensing agreements concerning comparable technology is more compelling when licensing agreements concerning the patents in suit are of limited availability or perhaps never existed at all. Here, all Defendants represent they have produced (or in the process of producing) all in-bound and out-bound licenses covering GPU technology, which the Court believes satisfies the factual considerations of the first and twelfth *Georgia-Pacific* factors. In light of the Federal Circuit's advice in *ResQNet.com* to "exercise vigilance when considering past licenses to technologies other than the patent in suit," and the tenuous relevance of the cross-licenses compared to the in-bound and out-bound licenses produced, the Court **GRANTS IN PART** and **DENIES IN PART** this portion of BIAX's motion as follows. The motion is **granted** in that to the extent Defendants have not yet produced any in-bound and out-bound licenses covering GPU technology, such licenses must be produced within ***ten calendar days*** of this order. The motion is further **granted** in that the Sony Defendants must produce any patent licensing policies also within ***ten calendar days*** of this order. The motion is **denied** as to the production of cross-licenses, on the bases that such production is irrelevant pursuant to *ResQNet.com* and *Fresenius*.

E.      Documents Concerning the Sale of Collateral Products

Plaintiff BIAX requests the Court to compel Defendants to produce "information directed to the existence and extent of [ ] convoyed sales." (Docket #234 at 15; docket #235 at 15.) In support of this request, BIAX asserts that the sixth *Georgia-Pacific* factor makes this information relevant, as it considers "the effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales." (Docket #234 at

14-15 (citing 318 F. Supp. at 1120).)  BIAX claims that "the amount of the reasonable royalty may be affected by whether and to what extent NVIDIA's use of the patent technology increased its sales of related products that are not covered by the Patents-in-Suit."  (*Id*. at 15; *see also* docket #235 at 15.)

In response, Defendant Nvidia explains that "a 'convoyed sale' is a sale of an unpatented item that is sold with the patented item and where the two items are 'analogous to components of a single assembly or [are] parts of a complete machine, or they must constitute a functional unit.'" (Docket #260 at 17-18 (citing *Rite-Hite Corp.*, 56 F.3d at 1550).)  Nvidia states that this theory "can broaden the damages inquiry to certain non-accused products."  (*Id*. at 17.)  However, Nvidia represents that "[t]here are no NVIDIA products here that would qualify, nor does BIAX mention any." (*Id*. at 18.)  Importantly, Nvidia also avers that its "entire product suite is viewable under the 'products' link of the Nvidia website."  (*Id*. at 17.)

In reply, BIAX complains that this is an example of Nvidia refusing to properly respond to discovery requests, if even to explain that it has no responsive documents.  (Docket #282 at 1.) BIAX contends that, if the allegation that Nvidia has no qualifying products, Nvidia should have stated so in its responses.  The Court agrees.  Nvidia, like BIAX and the Sony Defendants, bears a duty to respond truthfully to discovery requests within the confines of the federal rules and case precedent.  However, faced with Nvidia's contention that no product exists that would answer what BIAX now moves to compel, the Court **DENIES AS MOOT** this portion of BIAX's motion as to Defendant Nvidia.

The Sony Defendants do not specifically address the issue of convoyed sales in its response, but lump this category of documents into the categories it believes are overbroad.  (*See* docket #259 at 16-17.)  Sony argues that BIAX should first review the produced discovery, determine what it in

good faith believes is missing, and then make a more specific request. (*Id.*)

BIAX, in reply, argues that Sony's determination of BIAX's request as "speculative" is an insufficient basis for refusing production. (Docket #281 at 7.) BIAX asserts that statements regarding "the patented technology as the 'soul' of the GPU units [Nvidia] sells to Sony, and which Sony incorporates in its accused products," demonstrate that "linkage" exists "between the patented technology and customer demand." (*Id.* at 7.)

The Court finds the language of the sixth *Georgia-Pacific* factor clear in that "the effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales" is relevant to a calculation of damages based on a theory of "reasonable royalty." Without a more particularized and legally sound objection by the Sony Defendants, the Court agrees with BIAX's contention that production related to the existence and extent of convoyed sales is relevant to BIAX's damages analysis. Accordingly, this portion of BIAX's motion as to the Sony Defendants is **GRANTED**. Sony must produce information concerning the existence and extent of convoyed sales to the extent relevant to the sixth *Georgia-Pacific* factor within ***fourteen calendar days*** of the date of this order; the Court also limits this production to the time frame applicable to a reasonable royalty analysis under *Georgia-Pacific*, that is, as stated by BIAX, "the beginning of the infringement period."

F.    Documents Concerning the Market and Customers of the Accused Products

BIAX requests the Court to compel production responsive to Requests Nos. 40 and 42, concerning "documents that describe the market in which the Accused Products are sold, as well as [Defendants'] customers and competitors." (Docket #234 at 15; docket #235 at 15.) Defendant Nvidia addressed this request in its response, asserting that there should be no dispute as to this

subject matter because it has produced numerous responsive documents. (*See* docket #260 at 20-21.) BIAX did not address Nvidia's response concerning this category of documents in its reply. (*See* docket #282.) Accordingly, the Court **DENIES AS MOOT** this portion of BIAX's motion as to Defendant Nvidia.

The Sony Defendants do not specifically address the issue of documents concerning the market and customers of the accused products in its response, but include this category of documents into the categories it believes "fall outside the reasonable scope of a damages analysis in this case." (*See* docket #259 at 16-17.) Sony argues that BIAX should first review the produced discovery, determine what it in good faith believes is missing, and then make a more specific request. (*Id.*) BIAX did not address the Sony Defendants' response concerning this category of documents in its reply. (*See* docket #281.) The Court construes this portion of BIAX's motion **abandoned** as to the Sony Defendants, thus this portion of BIAX's motion is **DENIED**.

G.    Marketing Documents

The analysis for this category of documents is the same as above regarding documents concerning the market and customers of the accused products. These portions of BIAX's motions are **DENIED AS MOOT** as to Defendant Nvidia and **DENIED** as to the Sony Defendants.

H.    Documents Concerning Potential Alternative Technologies to the Patented Invention

BIAX requests the Court to compel "documents concerning potential alternatives to the patented technologies." (Docket #234 at 16; docket #235 at 16.) BIAX believes this information is relevant because 1) BIAX may need the information "should [Defendants] argue that there are non-infringing alternatives to the technology of the Patents-in-Suit," and 2) the information is relevant to the ninth *Georgia-Pacific* factor. (*Id.*) In response, Defendant Nvidia attests that "[u]pon a reasonable search, NVIDIA is not aware of any documentation related to designing around what

29

BIAX believes to be its claimed invention."  (Docket #260 at 21.)  BIAX does not refute this

contention in its reply.  (*See* docket #282.)  Accordingly, the Court **DENIES AS MOOT** this portion

of BIAX's motion as to Defendant Nvidia.

The Sony Defendants do not specifically address the issue of documents concerning potential

alternative technologies in its response, but include this category of documents into the categories

it believes "fall outside the reasonable scope of a damages analysis in this case."  (*See* docket #259

at 16-17.)  Sony argues that BIAX should first review the produced discovery, determine what it in

good faith believes is missing, and then make a more specific request.  (*Id*.)  BIAX does not address

its request for documents concerning potential alternative technologies in its reply.  (*See* docket

#281.)  The Court construes this portion of BIAX's motion **abandoned** as to the Sony Defendants,

thus this portion of BIAX's motion is **DENIED**.

I.      Documents Pertaining to NVIDIA Patent/License Litigations Involving the Same
        Accused GPUs

This category of documents applies to Defendant Nvidia only.  BIAX requests the Court to

compel production of expert reports, deposition transcripts and videos, pleadings and the records

produced by Defendant Nvidia in three cases involving the same GPUs which are Accused GPUs

in this matter: (1) *Intel v. Nvidia*, Case No. 4373-VCS, Delaware Chancery Court; (2) *Rambus, Inc.*

*v. Nvidia Corp.*, Case No. C-08-03343 SI (N.D. Cal.); and (3) ITC Investigation No. 337-TA-661

(Rambus ITC Investigation).  (Docket #234 at 16-17.)  More specifically, BIAX seeks "discovery

regarding the economic terms under which NVIDIA is permitted to manufacture and sell" a MCP

chipset "which incorporates or uses an Accused GPU," for example, the Nvidia/Intel license.  (*Id*.

at 17.)  BIAX also requests "the positions taken and testimony provided by NVIDIA vis-à-vis the

MCP chipset's use or incorporation of Accused GPUs."  (*Id*.)  Regarding the *Rambus* matter, BIAX

seeks "discovery as to the positions taken and testimony provided by NVIDIA in connection with this technology vis-à-vis the Accused GPUs." (*Id*.) Rambus had alleged that these same GPUs infringed its patents. (*Id*.) BIAX believes this information is relevant because of the relation of the memory controllers in the Accused GPUs to BIAX's patent claims pertaining "to the addressing of condition code registers and general registers, and other forms of memory." (*Id*.)

In response, Defendant Nvidia dismisses BIAX's assertion that the relevance of these documents rests on the relation to NVIDIA GPUs. (*See* docket #260 at 15.) Nvidia states, "all of NVIDIA's litigation touches upon its GPU business in one way or another. NVIDIA invented the GPU in 1999, and GPUs are its business." (*Id*.) Nvidia contends that the three cases referred to BIAX in its motion to compel do not concern the technology at issue here, "which, as BIAX has repeatedly stated in the discovery hearing, relates to the use of 'two or more condition code registers.'" (*Id*.) Nvidia avers that this request is nothing more than a fishing expedition, and would cost "tens of thousands of dollars of copy costs" and would require "a process that would take potentially hundreds of hours of lawyer time." (*Id*. at 16.) Nvidia claims an undue burden, as it would have to identify all documents that, for production, would require third-party approval, "which would in and of itself be very time consuming and expensive." (*Id*.)

In reply, BIAX informs the Court that it "offered to narrow its request to NVIDIA's pleadings and expert reports in those cases." (Docket #282 at 8.) BIAX explains that this request should be of minimal burden as "the pleadings and expert reports should not have third-party confidential information, but only NVIDIA confidential information." (*Id*.)

The Court, in balancing the described relevance of these documents to BIAX's case at hand against the alleged burden asserted by Defendant Nvidia, determines that this portion of BIAX's motion should be **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART**.

BIAX speculates that the expert reports submitted by Nvidia in the three separate matters should not include third-party confidential information, but this conclusion contradicts Nvidia's statement that its expert reports are "replete with that information." The Court believes that Nvidia's expert reports disclosed in this matter would obviously be most relevant, and without a stronger showing by BIAX that the expert reports from other litigation contain information directly relevant to its case, the Court accepts Nvidia's representations of burden and expense, at this time, and **denies without prejudice** BIAX's request for expert reports from the other three matters. If, after review of Nvidia's document production and Nvidia's expert reports, BIAX believes it still lacks certain identifiable information contained within the expert reports from the other three separate cases, BIAX may re-file this portion of its motion consistent with the requirements of D.C. Colo. LCivR 37.1. Regarding the request for pleadings, as these proceedings appear to the Court to be public proceedings, it should not be too burdensome for Nvidia to produce the pleadings filed in the three separate cases. The Court **grants** BIAX's motion to this extent, in that Nvidia shall produce its pleadings filed in (1) *Intel v. Nvidia*, Case No. 4373-VCS, Delaware Chancery Court; (2) *Rambus, Inc. v. Nvidia Corp.*, Case No. C-08-03343 SI (N.D. Cal.); and (3) ITC Investigation No. 337-TA-661 (Rambus ITC Investigation), with the <u>exception</u> of any pleading containing third-party confidential information necessitating third-party approval, within ***fourteen calendar days*** of this order. Nvidia shall withhold any document containing such third-party confidential information and record any withholding in a privilege log, to be contemporaneously produced.

### Motion to Compel the Sony Defendants to Respond to Plaintiff's Third Set of Interrogatories and Fourth Set of Requests for Production of Documents and Things (Docket #235)

The parties represent that Section D of this motion was resolved, and all other sections remain disputed. (Docket #308 at 2.) This motion, like the motion against Nvidia, focuses on

Plaintiff's ability to "conduct its reasonable royalty analysis and prepare its damages case for trial." (Docket #235 at 3.)  Plaintiff requests the Court to compel the Sony Defendants to produce:

I.     Damages-related information and documents prior to May 29, 2009 (Section A);

II.    Damages-related information and documents concerning world-wide sales of its accused products (Section B);

III.   Financial documents as created in the ordinary course of business (not summary documents created for purposes of this litigation) (Section C);

IV.   Additional information that is relevant to BIAX's reasonable royalty analysis (Section E) (financial information concerning the sales of accused products, documents concerning the commercial success of accused products, documents concerning pricing of accused products, license agreements and licensing policies, documents concerning the sale of collateral products, documents concerning the market and customers of the accused products, marketing documents, documents concerning potential alternative technologies to the patented invention).

All sections but Section A were resolved above, concurrent with the Court's disposition of the same sections in BIAX's motion to compel against Defendant Nvidia.  Accordingly, the Court addresses only Section A, as follows.

Plaintiff BIAX seeks damages-related information and documents dated prior to May 29, 2009, from the Sony Defendants.  BIAX represents its intention "to seek damages for any infringing sales that took place during the six-year limitations period."  (Docket #235 at 5-6.)  BIAX argues that Sony's sale of Playstation 3 products before the filing of this lawsuit on May 29, 2009, constitutes willful infringement, as Sony was allegedly on notice of the BIAX patents as early as 2000.  (*Id*. at 6.)  In any event, BIAX believes that pre-suit financial information is relevant to the *Georgia-Pacific* reasonable royalty analysis.  (*Id*.)  Under *Georgia-Pacific*, BIAX contends that this discovery, dating back to 2005, is important to evaluating the hypothetical negotiation between the infringer and the patent owner at the beginning of the infringement period.  (*Id*.)  BIAX submitted

a declaration by its damages expert in support of this position, claiming "data as to all sales of infringing products, regardless of whether they ultimately are included in a damages calculation" is important in analyzing the hypothetical negotiation contemplated by *Georgia-Pacific*. (*Id*. at 7 (internal citations omitted).)

Sony avers that "BIAX's demands for detailed discovery of pre-suit financial information are without merit because there is no plausible claim that can be made for pre-suit damages." (Docket #259 at 10.) Sony argues that because BIAX conceded that its licensees do not mark their products as statutorily required, "damages can therefore be recovered only from the time of 'actual notice' to the Defendants that the specific accused products infringe the asserted patents." (*Id*. (citations omitted).) Sony represents that it had no actual notice before BIAX filed suit on May 29, 2009. (*Id*. at 11.) Regarding BIAX's contention of willfulness, Sony states that "a willfulness claim is not a substitute for the marking requirements of Section 287." (*Id*.) Sony describes how BIAX itself is aware of this limitation, as it "previously agreed to limit production of financial information to the period after filing of the lawsuit." (*Id*. (citing to Feb. 11, 2010 hearing).) Sony further asserts that this discovery is, in any event, not relevant to the merits of the claims at issue at all, because "it merely relates to damages collectible if this frivolous claim were to somehow succeed." (*Id*. at 12.)

In reply, BIAX suggests that "Sony cannot simply rely on its own conclusion that BIAX's damages claim is 'frivolous' to withhold documents." (Docket #281 at 6.) BIAX restates its belief that the damages information is relevant, and as Sony did not argue production would be burdensome, the Court should compel production. Moreover, BIAX argues that the discovery is still relevant to its *Georgia-Pacific* analysis. (*Id*.)

In the July 14, 2010, hearing on these motions to compel and other discovery motions, Counsel for the Sony Defendants cited to *Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 24

F.3d 178 (Fed. Cir. 1994) to clarify that notice of a patent has no impact on entitlement to damages prior to the filing of a lawsuit; the patentee must give actual notice of infringement (for example, through the filing of a lawsuit, or through marking the patented product), which "kicks off the damages period."[4]  (Docket #311 at 103, 106.)  Counsel for Sony explained that there was no pre-suit notice of infringement in this matter, as BIAX admitted to not requiring their licensees to mark the patented products.  (*Id.* at 103-04; *see also id.* at 113 (counsel for BIAX stating his belief that BIAX did not require its licensees to mark the product), 114-15 (counsel for Sony reading a request for admission and BIAX's response into the record).)  Moreover, Sony attested that BIAX "stipulated that the defendants did not have to produce financial data prior to the date of the Complaint."  (*Id.* at 106.)  Sony argued that BIAX has not shown good cause permitting relief from the stipulation.  (*Id.*)  As to BIAX's claim that in any event, pre-suit financial information is relevant to a *Georgia-Pacific* analysis, Sony stated that the *Georgia-Pacific* analysis evaluates a hypothetical license negotiation that took place when the alleged infringement commenced, and in this case, Sony "introduced the first product that is accused of infringement in 2004, so under *Georgia-Pacific* you would look at that time period . . . ."  (*Id.* at 117.)

Section 287 of U.S.C. Title 35 prescribes that patentees may give notice to the public that the patented item is patented by fixing on the item the work "patent" or by fixing a label stating the same to the packaging of the patented item.  However, Section 287 also establishes that,

> In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.  Filing of an action for infringement shall constitute such notice.

---

[4] The Court notes that Mr. Ottenweller is listed on the docket as counsel for Defendant Nvidia and the Sony Defendants.

Here, BIAX admitted its licensees are not required to mark the patented products. Thus, pursuant to Section 287, BIAX must demonstrate other "proof that the infringer was notified of the infringement and continued to infringe thereafter." BIAX points to no evidence in its briefing that Sony had alternate notice of infringement, other than a conclusory statement explaining BIAX's contention "that as early as 2000, Sony was put on notice as to the BIAX patents." (Docket #235 at 6.) Counsel for Sony addressed this argument during the July 14 hearing, explaining how the discussions about patents between BIAX and Sony in the 2000-2001 time frame concerned the Playstation 2. (Docket #311 at 127-28.) Counsel for Sony represented that the Playstation 2 uses a different chip than the Playstation 3, and the Playstation 3 is the product at issue in this matter, not the Playstation 2. (*Id*. at 128.)

In weighing BIAX's unsupported assertion of notice (actually pertaining to the Playstation 2) against the Sony Defendants' robust arguments on the record that the pre-suit financial information is irrelevant for the stated reasons, the Court at this time does not believe that circumstances of the litigation warrant production of pre-suit financial information, with the following exception. The Court accepts BIAX's contention that pre-suit financial information is relevant to the *Georgia-Pacific* hypothetical negotiation analysis. However, the Court also accepts Sony's assertion that such analysis is limited in temporal scope to the time that the hypothetical negotiation would have occurred. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** this section of BIAX's motion as to the Sony Defendants. This section is **granted** to the extent Sony must produce pre-suit financial information limited to the information that the hypothetical negotiators would have had available to them in 2004, when the first allegedly infringing product (the G47) was introduced to the market, within ***fourteen calendar days*** of this order. This section is **denied** in all other respects.

# Conclusion

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff BIAX's Motion to Compel Responses to First Set of Interrogatories and Second Set of Requests for Production of Documents and Things [filed June 14, 2010; docket #226]; Plaintiff BIAX's Motion to Compel NVIDIA to Respond to Plaintiff's Third Set of Interrogatories and Fourth Set of Requests for Production of Documents and Things [filed June 25, 2010; docket #234]; and Plaintiff BIAX's Motion to Compel the Sony Defendants to Respond to Plaintiff's Third Set of Interrogatories and Fourth Set of Requests for Production of Documents and Things [filed June 25, 2010; docket #235], summarized as follows and as further explained above.

I. Plaintiff BIAX's Motion to Compel Responses to First Set of Interrogatories and Second Set of Requests for Production of Documents and Things [filed June 14, 2010; docket #226]:

*Section B*: denied as to Nvidia, denied as moot as to Sony;
*Section C*: Nvidia only - granted, with additional instruction and time limitation;
*Section D*: denied;
*Sections E-1, 2, and 3*: granted in part and denied in part, with additional instruction and time limitation; and
*Section G*: Interrogatory No. 16 as to Nvidia - denied without prejudice; Interrogatory No. 22 as to all Defendants - granted in part and denied in part; Interrogatories 23 & 24 as to Sony - granted, with additional instruction and time limitation.

II. Plaintiff BIAX's Motion to Compel NVIDIA to Respond to Plaintiff's Third Set of Interrogatories and Fourth Set of Requests for Production of Documents and Things [filed June 25, 2010; docket #234]:

*Section A*: denied as moot;
*Section B*: granted in part and denied in part, with additional instruction and time limitation;
*Section C*: denied;
*Section D* (*see also* #226, Section C): granted, with additional instruction and time limitation; and
*Section E* (all subsections): granted in part and denied in part, with additional instruction and time limitation.

III.   Plaintiff BIAX's Motion to Compel the Sony Defendants to Respond to Plaintiff's Third Set of Interrogatories and Fourth Set of Requests for Production of Documents and Things [filed June 25, 2010; docket #235]:

*Section A*: granted in part and denied in part, with additional instruction and time limitation;
*Section B*: granted in part and denied in part, with additional instruction and time limitation;
*Section C*: denied without prejudice, with additional instruction; and
*Section E* (all subsections): granted in part and denied in part, with additional instruction and time limitation.

SO ORDERED.

Dated at Denver, Colorado, this 21st day of September, 2010.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge