IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01257-PAB-MEH

BIAX CORPORATION,

    Plaintiff,

v.

NVIDIA CORPORATION,
SONY COMPUTER ENTERTAINMENT AMERICA, INC., and
SONY ELECTRONICS, INC.,

    Defendants.

## ORDER

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Plaintiff's Motion to Compel NVIDIA to produce Rule 30(b)(6) Deposition Witnesses [filed September 3, 2010; docket #362 (sealed docket #360)]. The motion is referred to this Court for disposition. (Docket #364.) The matter is fully briefed, and additional oral argument would not assist the Court in its adjudication. The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion as follows.

**I.**     **BACKGROUND**

Plaintiff requests the Court to compel NVIDIA's designation and production for deposition of a witness (or witnesses) to testify regarding Topics 3 and 4 propounded by BIAX in its Rule 30(b)(6) Notice of Deposition served on June 9, 2010.[1] Plaintiff also wants NVIDIA to make

---

[1] Topic 3: The development, design, marketing and sale of Collateral Products and/or Downstream Products; and Topic 4: The facts and circumstances surrounding the reasons for, negotiation of, amendments to, and performance and payments under the April 15, 2005 Definitive Agreement between Nvidia and Sony.

1

available for deposition seven individual deponents who are NVIDIA employees: Ned Finkle, Jeff Fisher, John Lonergen, Keith Olson, Tony Tamasi, Michael Turley, and Daniel Vivoli. Plaintiff contends that an NVIDIA representative who was deposed, Mr. Jason Paul, "was not prepared adequately to testify concerning several aspects of Nvidia's marketing efforts with respect to the Accused GPUs." (Docket #360 at 3.)

In its response, NVIDIA asserts that neither Topics 3 or 4 are relevant to this matter, as "there are no 'downstream' or 'collateral' products at issue," nor do the negotiations of the Sony-NVIDIA Definitive Agreement impact Plaintiff's damages analysis. (Docket #393 at 1-2.) Regarding the proposed seven individual deponents, NVIDIA states that they are senior executives, with no relevant testimony, and allowing their depositions "would be extremely disruptive." (*Id*. at 2.) Furthermore, NVIDIA challenges Plaintiff's averment that Mr. Paul lacked familiarity with the questions about marketing posed during his deposition. (*Id*. at 4.) NVIDIA addresses each proposed individual deponent in turn. As a final note, NVIDIA suggests that should the Court order the depositions, Plaintiff should have to pay the deposition costs and attorney's fees. (*Id*. at 15.)

In reply, Plaintiff narrowed its request to four proposed deponents: Ujesh Desai to testify regarding Topic 3, Brian Kelleher to testify regarding Topic 4, and the two persons that Mr. Jason Paul identified during his deposition as persons with knowledge. (*See* docket #403 at 4.) Plaintiff restates its position that both Topics 3 and 4 are relevant and appropriate deposition topics. (*Id*. at 6-7.) Plaintiff believes that had Mr. Paul been properly prepared, NVIDIA could have avoided the increase of costs and fees related to the depositions through this motions practice. (*See id*. at 10.) Plaintiff suggests that should the Court order the four depositions, the Court should also hold this motion in abeyance, in case the four deponents are similarly unprepared.

2

The Court permitted NVIDIA to file a surreply. (Docket #400.) NVIDIA contests Plaintiff's characterization of its request for relief as a compromise, as Plaintiff refused to agree that the four depositions would resolve this motion to compel. (Docket #413 at 1-2.) NVIDIA asks the Court to limit the number of depositions to two "and give NVIDIA the option of designating less senior personnel to appear before the depositions." (*Id*. at 2.) NVIDIA maintains its position that no depositions should be permitted regarding Topics 3 or 4, because neither topic is relevant. (*Id*.) NVIDIA argues that Mr. Paul was adequately prepared, as evidenced by his deposition and by Plaintiff not challenging Mr. Paul's testimony until after his deposition. (*Id*. at 4-5.)

## II. ANALYSIS

### A. *Supplementing Mr. Paul's Deposition*

The law is well-settled that corporations have an "affirmative duty" to make available as many persons as necessary to give "complete, knowledgeable, and binding answers" on the corporation's behalf. *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.,* 497 F.3d 1135, 1146 (10th Cir. 2007) (quoting *Reilly v. NatWest Mkt. Group Inc.,* 181 F.3d 253, 268 (2d Cir. 1999)). If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation. *United States v. Taylor,* 166 F.R.D. 356, 361 (M.D.N.C.), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996).

Review of Mr. Paul's deposition transcript indicates he "did not have any involvement in the RSX project," but he believes "the product marketing work was done by Tony Tamasi." (Docket #393-1 at 50.) Mr. Paul did state that most of the sales and marketing for RSX "was done several years ago," and that he was not aware of any active marketing of RSX presently. (*Id*. at 50-51.) By his own admission, Mr. Paul has no knowledge (or awareness) of the marketing related to the RSX

project. Mr. Paul also indicated that he has no knowledge of the financial terms related to "bundl[ing] a game with the graphics card," but Mr. Tamasi would be familiar with these contracts. (*See id*. at 146-47.) Furthermore, according to Mr. Paul, Mr. Tamasi is most familiar with NVIDIA's developer program. (*Id*. at 264.) Therefore, the Court believes that NVIDIA should produce Mr. Tamasi to supplement Mr. Paul's deposition.

Regarding Mr. Lonergen, review of the transcript indicates that Mr. Lonergen may have better information than Mr. Paul regarding the marketing documents related to the PartnerForce program, but it also appears to the Court that Mr. Paul adequately interpreted the document entered as Exhibit 112 and answered Plaintiff's inquiries regarding PartnerForce. (*See* docket #393-1 at 211-220.) Thus, the Court does not view a supplemental deposition of Mr. Lonergen quite as necessary or relevant as that of Mr. Tamasi. BIAX's motion is denied to this extent.

### B.     *Topics 3 and 4*

Regarding Topics 3 and 4, the Court reminds the parties that the scope of evidence subject to discovery under the federal rules is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1) (2010). The Court broadly construes relevance, and a request for discovery should be considered relevant if it is possible that the information sought may be relevant to the claim or defense of any party. *Bonanno v. Quizno's Franchise Co.*, 255 F.R.D. 550, 552 (D. Colo. 2009). When the requested information appears to be relevant, the party objecting to the discovery has the burden to establish the information is irrelevant by demonstrating the information does not

come within the scope of relevance as defined by Fed. R. Civ. P. 26(b)(1), or is of such marginal relevance that the harm in producing the information outweighs the presumption in favor of broad disclosure. *Id.*; *see also Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004). "Conversely, when the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Hammond v. Lowe's Home Ctrs. Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003); *see also Bonnano*, 255 F.R.D. at 553.

Topic 3 concerns the development, design, marketing and sale of collateral or downstream products. The Court denied as moot the section of Plaintiff's motion to compel NVIDIA to produce documents concerning "the existence and extent of [ ] convoyed sales," because NVIDIA attested that "[t]here are no NVIDIA products here that would qualify, nor does BIAX mention any." (*See* docket #388 at 26-27.) In its reply, Plaintiff represents that it supplemented its response to Interrogatory No. 1(d), "adding specific allegations of inducement infringement and downstream products." (Docket #403 at 6; *see also* docket #411 (supplemental response).) Plaintiff identifies third party direct infringers, the related infringing products, and which Accused NVIDIA GPU Plaintiff alleges is incorporated within the infringing products. (Docket #411.) Thus, Plaintiff asserts that Topic 3 is relevant to BIAX's claim for induced infringement "and may support a direct infringement claim based on Section 271(a)'s 'offer for sale' provision." (Docket #403 at 6.)

NVIDIA expresses its concern that it would be required to testify regarding "the manufacturing and sales actions of third parties." (Docket #413 at 5.) Rule 30(b)(6) specifically provides that "[t]he persons designated must testify about information known *or reasonably available* to the organization." Fed. R. Civ. P. 30(b)(6) (2010) (emphasis added). Rule 30(b)(6) places the burden upon the deponent to "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought ... and to prepare those persons in order that they

can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters. *Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007) (citing *Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Res. Auth.*, 93 F.R.D. 62, 67 (D.P.R. 1981)). The duty of preparation goes beyond matters personally known to the designee or to matters in which the designee was personally involved, and if necessary the deponent must use documents, past employees or other resources to obtain responsive information. *Id.* (citing *Taylor*, 166 F.R.D. at 361). Thus, the extent of NVIDIA's obligation is limited to information known or reasonably available through the use of documents, past employees or other resources. The Court believes Topic 3 meets the broad standard for relevance, and the plain language of Rule 30(b)(6) should assuage NVIDIA's concern regarding testifying about third parties' actions. Therefore, the Court orders NVIDIA to produce Mr. Desai for deposition on Topic 3.[2]

Topic 4 concerns the "facts and circumstances surrounding the reasons for, negotiation of, amendments to, and performance and payments under the April 15, 2005 Definitive Agreement between Nvidia and Sony." Plaintiff asserts that "testimony about those negotiations will provide more specific insight on how the parties valued the very technology at issue in this case." (Docket #403 at 7.) Plaintiff explains that the agreement embodies the financial terms of Defendant Sony's use of the RSX chip (an accused GPU) in its PlayStation 3 (an accused product). Plaintiff contends the information sought by Topic 4 is relevant to a hypothetical negotiation-based damages analysis. (*Id.*)

NVIDIA attests that the Definitive Agreement "is not even a patent license agreement . . . [but] is a manufacturing agreement that allows Sony to manufacture the RSX chip." (Docket #413

---

[2]NVIDIA initially identified Mr. Desai as the deponent responsive to Topic 4. (Docket #361-1 at 1.)

at 6; *see also* docket #393 at 7-8.) Thus, NVIDIA suggests that the Agreement has no legal relevance under the *ResQNet.com* court's analysis regarding the relevance of license agreements. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 871 (Fed. Cir. 2010).

The Court previously agreed with BIAX that the Agreement is relevant to the issue of damages. (*See* docket #311 at 44.) In the September 21, 2010 order, the Court analyzed *ResQNet.com*'s explanation that an evaluating court "must consider licenses that are commensurate with what the defendant has appropriated. If not, a prevailing plaintiff would be free to inflate the reasonable royalty analysis with conveniently selected licenses without an economic or other link to the technology in question." 594 F.3d at 872. Here, although NVIDIA argues that the Definitive Agreement does not concern licensing but only applies to manufacturing, upon review of the Agreement the Court finds multiple sections within the Agreement (*e.g.*, 3, 4.4, 5.2) govern licensing for Sony to utilize NVIDIA's intellectual property to develop Licensed Products. (*See* docket #393-4.) Thus, the Court finds that Topic 4 is indeed relevant to the issue of damages, and NVIDIA must produce Mr. Kelleher for deposition.[3]

### III. CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Compel NVIDIA to produce Rule 30(b)(6) Deposition Witnesses [filed September 3, 2010; docket #362 (sealed docket #360)]. NVIDIA shall produce Mr. Tamasi to supplement Mr. Paul's deposition concerning sales and marketing and Messrs. Desai and Kelleher to testify regarding Topics 3 and 4, respectively.

Dated at Denver, Colorado, this 14th day of October, 2010.

---

[3]NVIDIA initially identified Mr. Kelleher as the deponent responsive to Topic 4. (Docket #361-1 at 1.)

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge