IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01257-PAB-MEH

BIAX CORPORATION,

      Plaintiff,

v.

NVIDIA CORPORATION,
SONY COMPUTER ENTERTAINMENT AMERICA, INC., and
SONY ELECTRONICS, INC.,

      Defendants.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Defendant Sony's Combined Motion and Memorandum to Strike New Infringement Theories as Untimely [filed November 4, 2010; docket #487].  The motion is referred to this Court for disposition.  (Docket #492.)  The matter is fully briefed, and oral argument would not assist the Court in its adjudication.  For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the Sony Defendants' motion.

## I.      Background

      The Sony Defendants ("Sony") ask the Court to exclude Plaintiff BIAX's infringement contentions regarding PlayStation 3 ("PS3") games, namely NBA '09 and MLB '09, as untimely. (Docket #487 at 1-2.)  Sony believes BIAX shirked its Rule 26(e)(1) obligation, thus Rule 37(c)(1) requires exclusion of the late contentions.  (*Id*. at 3.)  Sony asserts that BIAX did not disclose infringement contentions regarding PS3 games in any interrogatory response before the discovery deadline on August 20, 2010, which they allege was extended for limited purposes only.  (*Id*. at 6.)

Sony avers that these contentions further include new assertions as to condition code registers, condition storage and entirely new patent claims ("'628 patent claims 27, 28 and '313 patent claims 22, 23"). (*Id*. at 7.) Sony states that BIAX cannot meet the Rule 37(c)(1) standard of substantial justification and no resulting harm, because BIAX "had full access to the source code for both of these games since May 2010." (*Id*. at 9.) Moreover, Sony explains it would be prejudiced by the admission of these infringement contentions as Sony would be required "to engage in numerous additional tasks that will take far longer than the limited time remaining." (*Id*. at 10.) Sony attests it could not "borrow" its analyses from previous work because the contentions at issue "rely upon new and different theories." (*Id*.) As an alternative to striking the contentions, Sony suggests that it not be subject to discovery obligations regarding the "new" contentions. (*Id*. at 13-14.)

In response, Plaintiff BIAX represents that it "has accused the PS3 games of infringing the Patents-in-Suit from the beginning of this lawsuit." (Docket #530 at 2.) BIAX blames any delay in the disclosure of its more detailed infringement contentions on "Sony's obstruction of BIAX's efforts to obtain discovery of the necessary code for the PS3 games." (*Id*.) BIAX points out that the Amended Complaint specifically alleges inducement by Sony of "those who manufacture and sell video games for the Playstation 3." (*Id*. at 3.) Additionally, BIAX explains it included "games which run on such Sony products" in its interrogatory responses submitted to Sony on April 9, 2010. (*Id*.) BIAX recounts that its motion to compel filed June 14, 2010, sought financial information related to "games developed for or capable of running on any accused product . . . . [T]he games may directly infringe by their use of infringing code sequences." (*Id*. at 3-4.) BIAX attests it included PS3 game infringement contentions again in supplemental interrogatory responses served September 28 and October 21, 2010, after BIAX "had full opportunity to review the code that Sony

had belatedly produced." (*Id*. at 4.)

BIAX explains that it requested discovery on games that run on the Playstation 2 or the Playstation 3 as early as September 8, 2009. (*Id*. at 5.)  BIAX then describes the chronology of obtaining that discovery, including the filing and adjudication of a motion to compel and the coordinating of experts and appropriate tools (*i.e.*, the dissassembler) for the deciphering of the technology. (*Id*. at 7-8.)  BIAX asserts it "provided Sony with a detailed infringement analysis of the two games that it was able to review [and] did so within a reasonable time." (*Id*. at 8.)  BIAX thus believes its Rule 26(e) supplementation was not untimely, as it provided the supplementation before the close of fact discovery (considering the extensions) "and promptly after it had a full opportunity to review the game source code." (*Id*. at 9.)  Should the Court decide that BIAX's supplementation was untimely, BIAX suggests that the Court should nonetheless not strike the infringement contentions because the supplementation "was substantially justified and Sony will suffer no undue prejudice as a result." (*Id*. at 10.)

In reply, Sony avers it had no notice of BIAX's new infringement contentions because they were simply "vague accusations . . . [and] do not contain the 'claim by claim, element by element, product by product' explanation BIAX was obligated to, and promised to, provide." (Docket #555 at 1-2.)  Sony contends BIAX had all necessary information and tools to provide detailed infringement contentions in June 2010. (*Id*. at 2.)  Moreover, Sony asserts the new contentions are premised on the RSX Programming Guide, which is the same basis for the original contentions, and NVIDIA produced the Guide on December 11, 2009. (*Id*.)  Sony reiterates the sequence of events dating from October 2009 to October 2010, including a motion to compel and an in-court hearing, leading up to BIAX's October 21 supplementation. (*Id*. at 4.)  Sony emphasizes that the new

contentions rely on an entirely new infringement theory, that is, the registers at issue are each multiple condition code registers, not single. (*Id*. at 2.) Sony suggests BIAX made this late change because it could not bring infringement contentions against the PS3 games under the single code theory. (*Id*. at 3.)

Sony alleges BIAX is responsible for any delay in reviewing the game code. (*Id*. at 5-6.) Sony states that, in July 2010, BIAX had "the source code, shader binary code, disassembler and compiler" for the two PS3 games, and BIAX's expert concluded his code review in the same month. (*Id*. at 5.) The infringement contentions for the two games cite only three lines of code, without any further analysis, thus Sony believes BIAX could have timely served these contentions. (*Id*.) In any event, Sony explains that the two new infringement contentions do not actually rely on game code, because the "registers are found in hardware - the RSX chip - not in game code." (*Id*. at 9.) The basis for these contentions lies in the RSX Guide produced in December 2009. (*Id*.) Regarding prejudice, Sony avers it will have to engage in a new defense analysis, as its previous "analysis under the theory BIAX disclosed in the original discovery period established that infringement was not possible because PlayStation 3 games do not use the multiple condition code registers accused by BIAX." (*Id*. at 10-11.) Additionally, Sony suggests the new infringement contentions change the claim construction already in place in this matter and "enlarges the scope of potential prior art." (*Id*. at 11.) In sum, Sony asserts the infringement contentions regarding the two PS3 games were untimely, without justification, and prejudicial; thus, the contentions should be stricken. (*Id*.)

## II.    Discussion

First, the Court addresses BIAX's averment that the allegations in the Amended Complaint regarding games provide notice of infringement contentions.   Upon review of the Amended

Complaint, the Court finds that BIAX mentions the PS3 games twice, in alleging that Sony has induced infringement by NVIDIA and by "those who manufacture and sell video games for the Playstation 3" in violation of both the '628 and '313 patents. (Docket #29 at 6, 8.) BIAX does not make any claim of direct infringement by the PS3 games. The Court does not find this argument compelling.

Review of the docket demonstrates that Defendants moved to compel BIAX's stated infringement contentions on February 9, 2010. (Docket #116.) The Defendants' joint Interrogatory No. 1, dated September 4, 2009, requested the following:

> Describe all bases for BIAX's contentions in its Amended Complaint that any of the Defendants have infringed and/or continue to infringe the Patents-in-Suit, including without limitation:
>
> (a) Each claim of each of the Patents-in-Suit that is allegedly infringed by each of the Defendants, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted;
>
> (b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Product") of each of the Defendants of which BIAX is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
>
> (c) A chart identifying specifically where each limitation of each asserted claim is found within each Accused Product, including for each limitation that BIAX contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Product that performs the claimed function.
>
> (d) For each claim that is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.
>
> (e) Whether each limitation of each asserted claim is alleged to be literally present

or present under the doctrine of equivalents in the Accused Product.

(Docket #116-5 at 2-3.)  BIAX responded to this interrogatory as to the Sony Defendants on October 8, 2009, listing "products which employ a plurality of condition code registers, including the Playstation 3 manufactured and sold by the Sony defendants which incorporates the RSX graphics system, Sony personal computers, including those which incorporate Nvidia Accused Products, and other products manufactured and sold by the Sony defendants." (Docket #116-6 at 5-6.)  BIAX did not include any reference to games.  The Court discussed the motion to compel with the parties on February 11, March 15, and March 26, 2010.  The Court issued a written order granting in part and denying in part this portion of the motion on April 14, confirming the Court's acceptance of the parties' agreed-upon deadline of April 16, 2010, for the submission of additional supplementation to Interrogatory No. 1.  (Docket #167 at 3.)

At a hearing on July 14, 2010, the Court again discussed the supplementation of Interrogatory No. 1 with the parties, but in regard to the Fermi line of products.  (*See* docket #311.) Counsel for BIAX represented that it was still in the process of reviewing RTL code, which was made available to BIAX on June 25.  (*Id*. at 55, 57.)  The parties also discussed the subpoenas issued by BIAX to PS3 game developers.  Counsel for Sony confirmed during that hearing that, at that point in the litigation on July 14, the games had not been accused of infringement.  (*Id*. at 153.) Counsel for BIAX explained that BIAX has asked Sony to identify the PS3 games and provide BIAX with access to the source code of particular games, because BIAX's interest in the games arises from possible direct infringement and the issue of convoyed sales.  (*Id*. at 154, 157.)  A lengthy discussion then ensued regarding how and whether BIAX can prove direct infringement by PS3 games.  Counsel for Sony did not challenge these assertions of potential infringement regarding

the games, but charged that BIAX could not prove "any linkage at all between these sales of games and the patented feature." (*Id*. at 165.)  Counsel for Sony suggested to the Court that BIAX look at the compiler and be given "a last opportunity [ ] to amend their infringement contentions based upon the games that they have or have access to." (Docket #311 at 170.)

In its June 14, 2010 motion to compel, BIAX sought production of the Sony Defendants' "identification of and financial information relating to games developed for or capable of running on any accused product or accused GPU, as well as the identification of Sony's game developers and their developer agreements." (Docket #226 at 11.)  BIAX believed this information to be relevant for both its liability and damages claims, "because the games may directly infringe by their use of infringing code sequences," and "sales of games give rise to damages as convoyed sales under the entire market value rule, since the games are functionally related to the infringing game systems using Nvidia chips." (*Id*.)  After a process of in-court discussions and status reports, the Court entered an order on September 21, 2010, granting this portion of BIAX's motion. (Docket #388 at 9-11.)  The Court instructed BIAX to choose three of the sixteen games in Sony's possession and control, and Sony to choose another three of the sixteen, for a total of six games to be accessible to BIAX's expert for code review. (*Id*. at 11.)  The Court ordered that the code review be completed "before the close of fact discovery." (*Id*.)

At the time of the July 14 hearing, the discovery deadline was set at August 20, 2010, which was the originally scheduled deadline. (Docket #57 at 10.)  Plaintiff filed a motion to extend this deadline on August 17, 2010, which the Court granted in part on September 20, resetting the discovery cutoff to October 15, 2010. (Docket #385.)  The Court held an additional conference regarding scheduling on September 28 and again reset the fact discovery deadline to November 30,

2010. (Docket #400.) At the September 28 hearing, the parties discussed BIAX's supplementation of Interrogatory No. 1(d) as well as BIAX's ongoing review of game code. (*See* docket #440.)

On November 23, 2010, the Court, in a written order, recognized the fact discovery deadline set at November 30, 2010, and extended the deadline for limited purposes to January 11, 2011, as to the Sony Defendants only. (Docket #523.) Plaintiff BIAX filed a motion to extend the discovery deadline on November 30, 2010, which the Court granted in part and denied in part. (Docket #550.) The Court declined to reconsider the limited-purpose extension to January 11, 2011, for the Sony Defendants. (*Id.* at 2.) As to Defendant NVIDIA, the Court permitted limited fact discovery after adjudication of BIAX's motion to compel, due on or before February 4, 2011. (Docket #573.) On February 7, 2011, the Court allowed time for an additional deposition by BIAX of an NVIDIA representative, to be completed by February 28, 2011. (Docket #621.)

The point of reviewing the complex history of this very contentious case is to determine precisely when the fact discovery deadline was scheduled, for purposes of Rule 26(e) supplementation. The Court determines that fact discovery (without restriction) closed November 30, 2010. Sony admits BIAX included "vague assertion[s]" regarding the PS3 games as directly infringing in its September 28, 2010 supplementation. (Docket #487 at 2.) The supplementation truly at issue, at least from Sony's stated perspective, is dated October 21, 2010, which is well within the fact discovery cutoff. (*Id.*)

This District does not include rules specific to patent cases in its Local Rules; thus, the Court analyzes the deadline for supplementation without the benefit of concrete rules governing disclosure of infringement contentions in patent cases. As described above, BIAX and Sony were aware of potential (and subsequently, actual) direct infringement allegations regarding the PS3 games since

BIAX's service of its first set of interrogatories on February 18, 2010, BIAX's April 9, 2010 supplementation (docket #487-6 at 3), and certainly, at the latest, upon Sony's receipt of BIAX's June 14, 2010 motion to compel.  (Docket #226-1.)  It is clear to the Court that given the ongoing discovery disputes regarding issues concerning the technology and financial information related to PS3 games in this lawsuit, supplementation related to such topics was reasonably due by "the close of fact discovery."  In this case, the close of fact discovery was reset unrestricted to November 30, 2010.

Therefore, the Court denies Sony's motion to the extent it requests the infringement contentions set forth in the October 21, 2010 supplementation be stricken.  The Court grants Sony's motion to the extent it requests that additional fact discovery not be allowed.  The fact discovery deadline has now passed.  The only fact discovery remaining to be completed is the additional deposition as ordered by this Court on February 7, 2011.  (Docket #621.)  BIAX has (or should have, as previously ordered) the financial information related to the PS3 games (pursuant to its convoyed sales damages theory) and it clearly has the relevant technological information, which it alleges provided the basis for the October 21 supplementation.  As described, this case has required constant Court involvement in the adjudication of ongoing discovery disputes related to all aspects of the case, and the Court finds no undue prejudice to either side resulting from this order.  BIAX may bring its additional infringement contentions, and Sony is not obligated to produce any additional discovery related to the PS3 games, outside of that previously ordered.

## III.   Conclusion

Accordingly, the Court **GRANTS IN PART and DENIES IN PART** Defendant Sony's Combined Motion and Memorandum to Strike New Infringement Theories as Untimely [filed

November 4, 2010; docket #487].  The Court will not recommend that BIAX's infringement theories related to PS3 games be stricken as untimely for the reasons stated herein.  The Court orders that fact discovery is closed for all purposes other than those specifically identified by the Court in its February 7, 2011 order.  (Docket #621.)  All other fact discovery deadlines have now passed.

Dated at Denver, Colorado, this 8th day of February, 2011.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge