IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01257-PAB-MEH

BIAX CORPORATION,

    Plaintiff,

v.

NVIDIA CORPORATION,
SONY COMPUTER ENTERTAINMENT AMERICA, INC., and
SONY ELECTRONICS, INC.,

    Defendants.

## ORDER

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Plaintiff's Motion to Exclude Late-Produced Evidence and Expert Testimony that Relies on Such Evidence [filed August 3, 2011; docket #732]. The matter is referred to this Court for disposition. (Docket #737.) The motion is fully briefed and oral argument will not assist the Court in its adjudication. For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the motion.

**I.     Background**

Plaintiff asks the Court to exclude certain evidence, and certain portions of Defendants' expert reports relying on such evidence, on the ground that it was not produced to Plaintiff until the time of Defendants' expert designations, well after the discovery deadline in this case, despite discovery requests from Plaintiff that should have resulted in its earlier disclosure. It appears that the evidence at issue consists of worldwide financial sales data; identification of patents held by NVIDIA and used in its allegedly infringing products; analysis by Andrew Tao concerning the

relative importance of NVIDIA's alleged use of BIAX's patent compared with other technology used in NVIDIA's devices; and engineer Michael Ludwig's work in creating a "design around" in NVIDIA's processes that would avoid any alleged use of BIAX's patent.

## II.      Analysis

### A.      Sales Information

It is indisputable (and undisputed) that during the discovery period, BIAX sought, and Defendants objected to, information regarding worldwide sales data. The objection was based on burdensomeness. NVIDIA now states that, during discovery, had BIAX asked for more basic sales information and not "a vast amount of NVIDIA worldwide sales data," this issue could have been resolved short of the present motion. NVIDIA does not represent that, during the pendency of the discovery dispute, it proffered a smaller subset of sales data, such as the "simple summary" of worldwide sales that was used by its expert Woodford. NVIDIA did not find the sales information particularly relevant until it determined, during Woodford's preparation, that accused sales "through January 31, 2011 total approximately 1.4 million units, not the 47.6 million proposed by [Plaintiff's expert] Mr. Weinstein." Now that NVIDIA found a way to argue that Plaintiff's damages are potentially only 2.9% of what it claims, the information is very useful (and probably worth the 58-78 man-hours NVIDIA contends would have been required to comply with BIAX's original discovery request). I do not attribute any improper motive to NVIDIA, but subsequent circumstances have proven that BIAX was correct in seeking worldwide sales data. A remedy is appropriate.

### B.      Identification of NVIDIA Patents and Use of Same in the RSX Chip

Defendants' experts discuss the relative importance of BIAX's two patents compared with NVIDIA's own patents used in the Defendants' allegedly infringing products. It appears to me that

BIAX never specifically asked for identification of all patents that NVIDIA contends apply to such products, but BIAX did ask for discovery concerning technical and operational details of the products. NVIDIA represented that it would "not proffer testimony on features of the accused products that are not specifically accused to infringe." After Plaintiff's expert rendered an opinion that BIAX's patented invention was crucial to the operation of the allegedly infringing products, NVIDIA found it logically necessary (if the data supported it) to minimize the relative importance of BIAX's invention compared with the other patented technology used in the products.

The first step in this process was to create "a statistical ranking of the relative value of BIAX's patents-in-suit and NVIDIA patents relating to the accused RSX chip." In creating this ranking, NVIDIA used corporate records and consultation with NVIDIA's Director of Intellectual Property, Richard Domingo, to generate a list of "patents relating to graphics technology of the RSX chip," which expert Dr. Jonathan Putnam used in his ranking analysis. This list, and several subsets that were created during the undertaking, did not exist at the time of discovery but were created to support Defendants' expert analysis and reports.

In a related endeavor, Defendants' expert, Woodford, analyzed the technology used in the RSX chip and determined that "condition codes" in the nature of BIAX's patents-in-suit have a "*de minimis* impact . . . on the overall performance of the accused GPU's." Woodford was assisted in reaching this conclusion by Andrew Tao, an NVIDIA engineer. Tao was deposed in this case, but based on NVIDIA's prior representations concerning places it would not go (quoted above), was not questioned in great detail regarding the other technology used in the products.

I believe that these issues merit the same outcome as the sales data. What was once considered as, perhaps, irrelevant has become acutely relevant as the parties have focused on the

issues that will be tried in this case rather than on discovery skirmishes. A remedy for Defendants' change of mind is necessary.

      C.      <u>Design Around</u>

Defendants have developed a "design around" that avoids using BIAX's patented technology. This was disclosed as part of Defendants' damages experts' reports. Defendant Sony states that during the post-fact-discovery expert phase of this litigation, its technical expert, Dr. Michael Zyda, developed this solution with assistance from NVIDIA engineer Michael Ludwig. This concept was not previously revealed by Defendants. During discovery, BIAX asked for information concerning potentially available alternative technology, and Defendants objected, which I sustained. BIAX has had the opportunity to take Zyda's and Ludwig's depositions. I view this expert disclosure as different than the other three. This seems to me to be the quintessential sort of work experts perform in cases of this nature. Of course, any such effort by Defendants' experts should be subject to appropriate inquiry through deposition as well as opportunity for rebuttal by the Plaintiff, but I do not believe the same sort of potential amelioration of prejudice is necessary as for the three prior subject areas for which information was, or should have been made, available during the discovery period. I will want to discuss with the parties, however, whether BIAX has had sufficient opportunity to rebut Zyda's analysis.

**III.**    **Conclusion**

Accordingly, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's Motion to Exclude Late-Produced Evidence and Expert Testimony that Relies on Such Evidence [<u>filed August 3, 2011; docket #732</u>], as noted herein. I would like to discuss the steps that are necessary (including, without limitation, additional discovery, additional expert designations, and fees and

costs) to address BIAX's meritorious contentions in light of the prejudice (if any) occasioned by the expert disclosures. This is more appropriately and efficiently determined through a hearing. The parties are directed to conference together and telephone my Chambers by the close of business **Wednesday, October 5, 2011** to obtain a date in the next two weeks at which these matters will be discussed. Out-of-town counsel are welcome to appear either in person or by telephone at the hearing. One factor relevant to any fees and costs that I may award is whether, during the discovery period, Defendants can establish that they offered alternatives to BIAX's allegedly broad requests for worldwide sales data, and whether, during the consultation required by Local Rule 7.1A prior to filing this motion, Defendants offered any options to BIAX concerning additional discovery or expert designations that might be engaged in to address prejudice to BIAX. Further, the parties should understand that any additional work necessary in this case must be accomplished consistent with the current trial date.

Dated at Denver, Colorado, this 4th day of October, 2011.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge