IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-01257-PAB-MEH

BIAX CORPORATION,

      Plaintiff,

v.

NVIDIA CORPORATION,
SONY COMPUTER ENTERTAINMENT AMERICA, INC., and
SONY ELECTRONICS INC.,

      Defendants.
_____

**ORDER**
_____

This matter is before the Court on the motions for summary judgment [Docket

Nos. 701/729, 872/876, 882/887][1] filed by defendants Sony Computer Entertainment

America, Inc. and Sony Electronics Inc. (collectively, the "Sony defendants") and

NVIDIA Corporation ("NVIDIA").  The motions are ripe for disposition.

The Court exercises federal question jurisdiction over this case pursuant to 28

U.S.C. § 1331 in conjunction with 28 U.S.C. § 1338(a), which grants district courts

original jurisdiction over patent cases.

**I.  BACKGROUND**[2]

Plaintiff BIAX Corporation ("BIAX") has brought suit against defendants NVIDIA

Corporation and the Sony defendants, alleging that defendants have infringed and

_____

[1]Each motion for summary judgment, including NVIDIA's corrected version, has
been filed under seal, which accounts for the numerous docket entries.

[2]Unless otherwise indicated, the following facts are not in dispute.

induced infringement of U.S. Patent No. 5,517,628 (the "'628 Patent") and U.S. Patent No. 6,253,313 (the "'313 Patent") (collectively, the "patents"), both assigned to BIAX. As stated in the patents' shared specification, the "invention generally relates to parallel processor computer systems and, more particularly, to parallel processor computer systems having software for detecting natural concurrencies in instruction streams and having a plurality of processor elements for processing the detected natural concurrencies." '313 Patent col. 1 ll. 18-23. As the Court has previously noted, *see* Docket No. 231 at 3, the invention relies on processor elements that access register files containing relevant information for subsequent processing of instructions. Included within the teachings of the inventions are condition code register files containing multiple, addressable condition code registers, each of which contains condition codes indicating whether the results of executed instructions meet certain conditions. The condition codes can include indications of whether the next instruction in a series should be executed or whether a branch must be taken, requiring a jump to an earlier or later instruction. The provision of multiple, addressable condition code registers is a central feature of the claimed invention.

BIAX accuses the Sony defendants of infringing the patents through the sale of products containing RSX graphics processor chips and GeForce NV40 and NV50 processor chips employing a plurality of condition code registers. Within each RSX chip are eight "vertex shaders" and six "fragment shaders." Each vertex shader and fragment shader contains an accused processor element[3] or first circuit[4] and multiple

---

[3]In the Order Regarding Claim Construction, the Court construed "processor element" to be "a device that is capable of interpreting and executing instructions, a

accused condition code registers[5] and condition storage.[6]  The accused processor elements or first circuits found in one RSX shader cannot access condition code registers and condition storage found in any other shader.  BIAX's claims against NVIDIA are based on NVIDIA's production of the NV40 and NV50 chips.  NV40 chips operate in the same way for purposes of BIAX's infringement allegations.  NV50 chips contain accused processor elements and first circuits which cannot access condition code registers in other processors[7] found in the NV50 chip.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010).  A

---

quality it shares with all other processor elements, and which does not retain context information after the execution of an instruction or a set of instructions."  Docket No. 231 at 47.

[4]A "first circuit" is "an assemblage of electronic elements that receives an opcode of a first type of instruction and generates a set of at least one condition value."  Docket No. 231 at 48.

[5]A "condition code register" is "a special purpose register for storing a condition code."  Docket No. 231 at 47.

[6]"Condition storage" is "a memory location designed to store condition code values."  Docket No. 231 at 48.

[7]A "processor" is the same as a "processor element."  *See* Docket No. 231 at 47.

disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. DISCUSSION

Defendants raise a number of arguments in support of their summary judgment motions. They all contend, however, and the Court agrees, that they are entitled to summary judgment on BIAX's infringement claims based upon a comparison of the Court's constructions of the terms "condition code registers" and "condition storage" with the allegedly infringing products. *See SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1334-35 (Fed. Cir. 1999) ("An infringement analysis involves two steps. First is claim construction – the scope and meaning of the patent claims asserted are determined. Second is determination of infringement – the properly construed claims are compared to the allegedly infringing product.") (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc)).

BIAX contends that the patents do not require that all processor elements be able to access all condition code registers and condition storage. The Court, however,

has already unambiguously ruled that they do.  In construing the '628 Patent, the Court

determined that the defendants were "correct that any processor element is able to

access any condition code register."  Docket No. 231 at 37.  The Court further found

that "'condition storage' appears to refer to any memory location designed to store

condition code values and is, therefore, potentially broader than other 'registers,' as

described in Claim 1 of the '313 Patent."  Docket No. 231 at 43 (citing '313 Patent col.

46 ll. 14-24 (". . . each of said processor elements being capable of accessing said

plurality of registers and condition code storages in a program's context during the

processing of the program's instruction, a plurality of memory locations . . ., and second

means . . . for connecting each of said processor elements with any one of said plurality

of memory locations, each said processor element being capable of accessing said

memory locations during said processing of each said instruction.")).  Because the

claim language provided for shared access of the condition code storages by processor

elements, the Court did not import language to that effect into the definition of condition

storage.  *See* Docket No. 231 at 44.  However, the Court made clear that, "to the extent

there is any dispute over whether, despite the foregoing, condition code storage

locations are shared by all processor elements, the Court rules that they are."  Docket

No. 231 at 44.

In light of the foregoing constructions, the Court stated there was "little risk that

plaintiff will attempt to argue at trial that processor elements are not able to access any

condition code registers or condition storage locations."  Docket No. 455 at 2.  Yet, that

is the very argument BIAX asserts in response to defendants' motions.

BIAX admits that the accused processor elements and condition code registers

are one of many within the RSX, NV40, and NV50 chips.  *See* Docket No. 757 at 1-2,

¶¶ 1-3, 8, 9.  Nevertheless, BIAX argues that it has identified a single processor

element or first circuit within each of the chips that infringe the patents and, "with only

one 'first circuit' and one 'processor element' the concept of condition code registers . . .

being 'shared by all first circuits' or 'shared by all processor elements' is immaterial and

irrelevant."  Docket No. 757 at 7.  A processor element, however, still must be capable

of accessing any condition code register.  *See* Docket No. 231 at 37 ("In the event there

is only one processor element, that processor element is capable of accessing any of

the condition code registers for storing condition code values.  In that event, the register

is not shared by all processor elements since there would just be one.").  The attempted

isolation of a single processor element does not change the fact that any particular

processor element in the accused chips is incapable of accessing all condition code

registers and that any particular condition code register is not shared by all of the other

processor elements which exist within the accused chips.[8]

In short, BIAX does not dispute that the allegedly infringing processor elements

found in RSX, NV40 and NV50 chips are incapable of accessing condition code

registers or condition storage found in other processor elements within the respective

chips.  Nor does it dispute that, if such access is a requirement of the patents, the

defendants are entitled to summary judgment.  Because the Court has found such

access to be a requirement of the patents, defendants are entitled to summary

---

[8]For this reason, BIAX's reliance on the *SunTiger* court's statement that, "[i]f a claim reads merely on a part of an accused device, that is enough for infringement," 189 F.3d at 1336, is unavailing.

judgment on BIAX's infringement claims.

Upon granting summary judgment to defendants on plaintiff's claims of infringement and on defendants' counterclaims for a declaratory judgment of non-infringement, all that will remain in this action are the defendants' counterclaims seeking a declaratory judgment that the patents are invalid and unenforceable.  A ruling of non-infringement does "not moot in the Article III sense of the term" a counterclaim seeking a declaratory judgment of invalidity, *see Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1353 (Fed. Cir. 2007) (citing *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, (1993)), or of unenforceability on account of inequitable conduct. *See Zenith Electronics Corp. v. PDI Communication Systems, Inc.*, 522 F.3d 1348, 1366 (Fed. Cir. 2008).  Nevertheless, the Court retains discretion under the Declaratory Judgment Act to determine whether to decide a counterclaim after concluding there has been no infringement.  *Benitec*, 495 F.3d at 1353 ("Our decisions holding that *Cardinal Chemical* does not compel a district court to decide an invalidity counterclaim after entering a judgment of non-infringement are best understood as recognizing district court discretion under the Declaratory Judgment Act.") (citing *Liquid Dynamics v. Vaughan Co., Inc.*, 355 F.3d 1361, 1371 (Fed. Cir. 2004) ("A district court judge faced with an invalidity counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice, subject to review only for abuse of discretion."); *Cardinal Chemical*, 508 U.S. at 95 n.17 ("[T]he Declaratory Judgment Act affords the district court some discretion in determining whether or not to exercise that jurisdiction, even when it has been established.")).

In the exercise of that discretion, "[i]t is appropriate for a district court to dismiss as 'moot' counterclaims of unenforceability and invalidity when non-infringement is clear and invalidity and unenforceability are not plainly evident." *Z Trim Holdings, Inc. v. Fiberstar, Inc.*, 2008 WL 2717656, at *1 (W.D. Wis. April 10, 2008) (citations omitted) (dismissing invalidity and unenforceability counterclaims because they were "hardly a 'slam dunk'"); *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 2011 WL 3268576, at *2 (M.D. Fla. July 29, 2011) (dismissing counterclaims of invalidity without prejudice after a ruling of non-infringement in light of, among other things, "the apparent complexity of the invalidity issue, the Court's heavy caseload, and the inordinate amount of time it would take to address the validity of the ninety-two claims presently at issue").  Here, the Court has already denied a motion for summary judgment by defendant NVIDIA raising new matter and inequitable conduct defenses.  *See* Docket No. 663.  In their counterclaims, defendants assert that the patents' claims "are invalid on numerous grounds, including lack of written description, lack of written description relating to new matter, lack of enablement, double-patenting, and anticipation and/or obviousness in light of the prior art."  Docket No. 748 at 8-9.  They also seek a declaratory judgment that the "patents-in-suit are unenforceable . . . . on numerous grounds, including inequitable conduct , unclean hands, laches, estoppel, prosecution laches, and other patent misuse."  Docket No. 748 at 9.  Defendants, however, have not sought summary judgment on their counterclaims.[9]

Furthermore, in determining whether to address the counterclaims, the Court

---

[9]Plaintiff has filed a motion for summary judgment on defendants' inequitable conduct counterclaim.  *See* Docket Nos. 707, 730.

may consider whether "a company once charged with infringement [is] concerned about the risk of similar charges if it develops and markets similar products in the future." *Cardinal Chemical*, 508 U.S. at 100.  "The 'importance to the public at large of resolving questions of patent validity' has been long recognized, as there is a danger that holders of invalid patents may be awarded improper monopoly privileges so long as the issue of patent validity remains unsettled, and a declaratory judgment may be sought to 'avoid the threat of a "scarecrow" patent' used to gain an advantage over a competitor." *Sony Electronics, Inc. v. Soundview Technologies, Inc.*, 359 F. Supp. 2d 173, 175-76 (D. Conn. 2005) (quoting *Cardinal Chemical*, 508 U.S. at 95-96).  Beyond speculation, however, the Court has no basis upon which to determine whether such is a concern in this case.  Therefore, the Court will afford the parties an opportunity to address whether the Court should exercise jurisdiction over defendants' counterclaims.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the motion for summary judgment [Docket Nos. 701, 729] filed by defendants Sony Computer Entertainment America, Inc. and Sony Electronics Inc. is GRANTED.  It is further

**ORDERED** that the motion for summary judgment [Docket Nos. 872, 876, 882, 887] filed by defendant NVIDIA Corporation is GRANTED.  It is further

**ORDERED** that all of plaintiff's claims are DISMISSED and the only remaining claims in this action are defendants' counterclaims.  It is further

**ORDERED** that those pending motions and objections which relate only to the

issue of infringement and damages resulting therefrom [Docket Nos. 692/723, 697/726, 698/727, 708/731, 719/734, 721/735, 879] are deemed moot.  It is further

      **ORDERED** that, within ten days of entry of this order, the parties shall file briefs not exceeding five pages addressing whether the Court should exercise jurisdiction over defendants' counterclaims.

      DATED February 15, 2012.

                        BY THE COURT:

                        s/Philip A. Brimmer
                        PHILIP A. BRIMMER
                        United States District Judge