IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-01257-PAB-MEH

BIAX CORPORATION,

      Plaintiff,

v.

NVIDIA CORPORATION,
SONY COMPUTER ENTERTAINMENT AMERICA, INC., and
SONY ELECTRONICS INC.,

      Defendants.

_____

**ORDER**
_____

      This matter is before the Court on Defendants' Motion for Recovery of Attorneys' Fees and Expenses Incurred After Claim Construction [Docket No. 956/981] filed by defendants Sony Computer Entertainment America, Inc. and Sony Electronics Inc. (collectively, "the Sony defendants") and NVIDIA Corporation ("NVIDIA"). The Court's jurisdiction is based on 28 U.S.C. §§ 1331 and 1338(a).

## I. BACKGROUND

      Plaintiff BIAX Corporation ("BIAX") brought suit against NVIDIA and the Sony defendants, alleging that defendants infringed and induced infringement of U.S. Patent No. 5,517,628 (the "'628 Patent") and U.S. Patent No. 6,253,313 (the "'313 Patent") (collectively, the "patents"), both assigned to BIAX.[1] As stated in the patents' shared

_____

[1] Certain facts are drawn from the Court's Order [Docket No. 941] on defendants' motions for summary judgment of non-infringement [Docket Nos. 701/729, 872/876, 882/887]. Each motion for summary judgment has been filed under seal, creating two separate docket entries: one public and one restricted.

specification, the "invention generally relates to parallel processor computer systems and, more particularly, to parallel processor computer systems having software for detecting natural concurrencies in instruction streams and having a plurality of processor elements[2] for processing the detected natural concurrencies." '313 Patent col. 1 ll. 18-23.  As the Court has previously noted, *see* Docket No. 231 at 3, the invention relies on processor elements that access register files containing relevant information for subsequent processing of instructions.  Included within the teachings of the inventions are condition code register files containing multiple, addressable condition code registers,[3] each of which contains condition codes indicating whether the results of executed instructions meet certain conditions.  The condition codes can include indications of whether the next instruction in a series should be executed or whether a branch must be taken, requiring a jump to an earlier or later instruction.  The provision of multiple, addressable condition code registers is a central feature of the claimed invention.

BIAX accused the Sony defendants of infringing the patents through the sale of products containing RSX graphics processor chips and GeForce NV40 and NV50 processor chips employing a plurality of condition code registers.  Within each RSX chip

---

[2] In the Order Regarding Claim Construction, the Court construed "processor element" to be "a device that is capable of interpreting and executing instructions, a quality it shares with all other processor elements, and which does not retain context information after the execution of an instruction or a set of instructions."  Docket No. 231 at 47.

[3] A "condition code register" is "a special purpose register for storing a condition code."  Docket No. 231 at 47.

are eight "vertex shaders" and six "fragment shaders."  Each vertex shader and

fragment shader contains an accused processor element or first circuit[4] and multiple

accused condition code registers and condition storage.[5]  The accused processor

elements or first circuits found in one RSX shader cannot access condition code

registers and condition storage found in any other shader.  BIAX's claims against

NVIDIA are based on NVIDIA's production of the NV40 and NV50 chips.  NV40 chips

operate in the same way for purposes of BIAX's infringement allegations.  NV50 chips

contain accused processor elements and first circuits which cannot access condition

code registers in other processors[6] found in the NV50 chip.

Prior to the Court's June 21, 2010 Order Regarding Claim Construction,[7]

defendants proposed that the Court construe the term "condition code register" to mean

"a special purpose register for storing a condition code, which is shared by all processor

elements."  Docket No. 231 at 35.  The Court declined to incorporate the phrase "which

is shared by all processor elements" into its construction because it found that "Claim 1

provides for the possibility of a single processor element," in which case "the register

[would not be] shared by all processor elements since there would just be one."  Docket

---

[4] A "first circuit" is "an assemblage of electronic elements that receives an opcode of a first type of instruction and generates a set of at least one condition value." Docket No. 231 at 48.

[5] "Condition storage" is "a memory location designed to store condition code values."  Docket No. 231 at 48.

[6] A "processor" is the same as a "processor element."  *See* Docket No. 231 at 47.

[7] The claim construction applied to claims 1, 9 through 14, 16, 17, 20, 23, 25, 26, and 29 of the '628 Patent and claims 3 through 5, 8, 9, 12, 14 through 16, 19 through 21, and 24 of the '313 Patent.  Docket No. 231 at 4-6.

No. 231 at 37.  It went on to explain that,

> while defendants are correct that any processor element is able to access any condition code register, their argument to include within the definition of "condition code register" a reference to multiple processor elements sharing the condition code register is a more limited definition than Claim 1 requires. Because that feature is separately provided for in the claim language, it need not be included within the definition of the component of the system called a "condition code register."

*Id*.  In construing the term "condition storage," the Court again rejected defendants' request to include a clause indicating that condition storage is "shared by all processor elements."  Docket No. 231 at 44.  The Court explained that including this phrase in the claim construction was unnecessary because "the claim language clearly provides that the 'condition code storages' are accessible by 'each of said processor elements.' . . . But, to the extent there is any dispute over whether, despite the foregoing, condition code storage locations are shared by all processor elements, the Court rules that they are."  *Id*.

On August 11, 2010, defendants filed a motion for clarification of the Court's construction of the terms "condition code register" and "condition storage."  Docket No. 335.  Defendants argued that the Court should amend its construction to make explicit its finding that condition code registers and condition storage were shared by all processors.  Docket No. 335 at 1-2.  On October 28, 2010, the Court denied defendants' motion, explaining that the claim construction was unambiguous because the claim language itself provided that each processor could access each condition code register and condition storage location.  Docket No. 455 at 1-2.  The Court concluded that:

> defendants' real concern appears to be that, because the Court's

4

construction of the terms did not include specific reference to an attribute of the processor element, plaintiff might attempt to present constructions or arguments to a jury that are inconsistent with the Court's unambiguous rulings.  The Court, however, ruled that it is unnecessary to include the attribute of shared access in the construction of the two terms because such a quality was already clearly provided for by the claims at issue.  Plaintiff has expressed no confusion regarding that ruling and has not sought clarification. The Court, therefore, sees little risk that plaintiff will attempt to argue at trial that processor elements are not able to access any condition code registers or condition storage locations.

Docket No. 455 at 2.

Defendants' June 23, 2011, deposition of Dr. Edward Davidson, one of BIAX's

expert witnesses, yielded the following exchanges:

Q.  In forming your infringement opinions with respect to the '628 patent, did you apply a requirement that the processor element is capable of accessing any of the condition code registers? . . .

A.  No, I did not apply that.

***

Q.  In forming your infringement opinions for the '313 patent, did you apply a requirement that condition code storage locations are shared by all processor elements?

A.  By all processor elements in the RSX?  No.

***

Q.  Do we agree, then, that if there is a requirement that processor elements need to access any of the condition code registers or condition code storage locations in the chip, then RSX doesn't infringe?

A.  It doesn't infringe that requirement, no.  But there is no such requirement.

Docket No. 956-2 at 6, ll.15-24; 7, ll.4-9; and 8, ll.12-18.

On August 3, 2011, the Sony defendants filed a motion for summary judgment of

non-infringement [Docket Nos. 701/729].  On November 2, 2011, NVIDIA filed a motion

for summary judgment of non-infringement [Docket Nos. 872/876].  Defendants argued that summary judgment was warranted because the accused devices did not satisfy the Court's construction of "condition code register" and "condition storage."

In its response [Docket Nos. 757/766] filed on September 9, 2011, BIAX admitted that "[a]ccused 'condition code registers' and 'condition storage' found in any one RSX shader cannot be accessed by 'processor elements' or 'first circuits' found in any of the other RSX shaders" and that "[a]ccused 'processor elements' or 'first circuits' in any one RSX shader cannot access 'condition code registers' and 'condition storage' in any other RSX shaders."  Docket No. 757 at 1, ¶ 4-6.  However, BIAX argued that these admissions were not relevant because, according to its reading of the claim construction, shared access was not a limitation applicable to all claims but only to those claims that explicitly state that limitation, namely, unasserted claim 2 of the '628 Patent and unasserted claim 1 of the '313 Patent.  Docket No. 757 at 6.  ("Rather, [the] Court has held only that the claims themselves specify whether 'shared access by all processor elements' is required"); *see also* Docket No. 1018 at 1 (explaining that BIAX understood the "shared by all" concept to apply only to "specific patent claims containing that limitation–including '628 patent claim 2 and '313 patent claim 1").

BIAX also argued that "each individual Vertex Process Engine ('VPE') within the RSX chip and the NV40 chips is a separate infringing device" and thus that the requirement that condition code registers be shared by all processing elements was irrelevant.  Docket No. 757 at 6-7.  BIAX relied on *SunTiger, Inc. v. Scientific Research Funding Grp.*, 189 F.3d 1327 (Fed. Cir. 1999), which held that sunglass lenses coated with a patented orange dye could infringe the patent even though the lenses were also

6

coated with a gray dye that was not covered by the patent.  The court in *SunTiger* held

that the addition of an extra element does not negate a finding of infringement unless

the "claim is specific as to the number of elements and the addition of an element

eliminates an inherent feature of the claim."  *Id*. at 1336.  The court also stated: "we

have never required that a claim read on the entirety of an accused device in order to

infringe.  If a claim reads merely on a part of an accused device, that is enough for

infringement."  *Id*.  BIAX contended that treating defendants' VPEs in isolation was

analogous to considering a portion of a sunglass lens in isolation and thus that each

individual VPE could be considered an infringing device.  Docket No. 757 at 6-9.  BIAX

argued that this analysis rendered irrelevant any requirement that processors share

access to condition code storage locations in other VPEs on the same chip.  *Id*.

On February 15, 2012, the Court granted defendants' motions for summary

judgment of non-infringement on the basis that the accused processors could not

access condition code registers or condition storage in other parts of the chip, which

was a requirement of the asserted patents.  Docket No. 941 at 6.  In addition, the Court

stated that:

> BIAX contends that the patents do not require that all processor elements be
> able to access all condition code registers and condition storage.  The Court,
> however, has already unambiguously ruled that they do. . . .  In light of the
> foregoing constructions, the Court stated there was "little risk that plaintiff will
> attempt to argue at trial that processor elements are not able to access any
> condition code registers or condition storage locations."  Docket No. 455 at
> 2.  Yet, that is the very argument BIAX asserts in response to defendants'
> motions.

Docket No. 941 at 4-5.  The Court also rejected BIAX's argument based on *SunTiger*,

reiterating its statement in the claim construction that, "[i]n the event there is only one

processor element, that processor element is capable of accessing any of the condition

code registers for storing condition code values."  Docket No. 231 at 37.  The Court

explained that:

> [t]he attempted isolation of a single processor element does not change the
> fact that any particular processor element in the accused chips is incapable
> of accessing all condition code registers and that any particular condition
> code register is not shared by all of the other processor elements which exist
> within the accused chips.

Docket No. 941 at 6.  The Court's ruling was affirmed by the Federal Circuit on March

18, 2013.  Docket No. 1036.

On April 27, 2012, defendants filed the instant motion for attorneys' fees

pursuant to 35 U.S.C. § 285 or, in the alternative, 28 U.S.C. § 1927.  Docket No.

956/981.  Defendants seek to recover fees and costs accrued between the time the

Court issued its Order Regarding Claim Construction on June 21, 2010 and the Court's

grant of summary judgment on February 15, 2012, a total of $6,271,888.67.  Docket

No. 956 at 7, 14.

## II.  DISCUSSION

### A.  Fee Awards under the Patent Act

The Patent Act provides that, in "exceptional cases," a court may award

attorney's fees to the prevailing party.  35 U.S.C. § 285.  The decision to award fees

proceeds in two steps.  First, the Court must determine whether the prevailing party has

proved by clear and convincing evidence that the case is exceptional.  *Forest Labs.,*

*Inc. v. Abbott Labs.*, 339 F.3d 1324 (Fed. Cir. 2003).  Second, the Court must exercise

its discretion to determine whether an award of fees is appropriate.  *Cybor Corp. v. FAS*

*Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (internal citations omitted).  To show that a case is exceptional, the prevailing party must show either (1) inequitable conduct before the Patent and Trademark Office; (2) litigation misconduct; (3) vexatious, unjustified, and otherwise bad faith litigation; or (4) a frivolous suit or willful infringement.  *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002).

   "Absent litigation misconduct or misconduct in securing the patent, a district court can award attorney fees under § 285 only if the litigation is both: (1) brought in subjective bad faith; and (2) objectively baseless."  *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916 (Fed. Cir. 2012) (citing *Old Reliable Wholesale, Inc. v. Cornell Corp*, 635 F.3d 539, 543-44 (Fed. Cir. 2011)).  "The existence of objective baselessness is to be determined based on the record ultimately made in the infringement proceedings."  *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011).  The fact that a plaintiff may have filed the case in good faith does not protect it from an award under § 285 if it pursues its claim in bad faith after developments in the case have made its claim baseless.  *See Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1373-74 (Fed. Cir. 2012) (Reyna, J. concurring).  Bad faith is "synonymous with a patent holder's unreasonable continued pursuit of an infringement claim that has been demonstrably shown to be based on 'wrongful intent, recklessness, or gross negligence.'"  *Id*. at 1374 (quoting *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003).

   Once a case is found to be exceptional, a court considers both tangible and

intangible factors to determine whether a fee award is appropriate, including "the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice." *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1378 (Fed. Cir. 2001) (quoting *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1197 (Fed. Cir. 1996)); *see also Modine Mfg. Co. v. Allen Gp., Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990) ("[t]he trial judge is in the best position to weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser").

In *MarcTec*, the Federal Circuit upheld an award of attorney's fees under § 285 on a finding that "MarcTec subjectively knew that it had no basis for asserting infringement and therefore pursued [the] litigation in bad faith." 664 F.3d at 918. The Federal Circuit found that the district court properly relied on its finding that, even after MarcTec had documentary evidence establishing that one of the claim limitations was not satisfied, it "pursued its frivolous action by relying on mischaracterizations of the claim construction." *Id.* The Federal Circuit further found that "MarcTec's decision to continue the litigation after claim construction further supports the district court's finding that this is an exceptional case." *Id.* at 919.

Likewise, in *Phonometrics*, the Federal Circuit held that Phonometrics' failure to "articulate a viable theory of infringement" supported the district court's finding that Phonometrics "continued to litigate this case knowing that its claim could not meet the

10

standard for infringement" of the patent. 350 F.3d at 1247, 1248; *see also Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1310 (Fed. Cir. 2012) ("Highmark contends that the . . . objective reasonableness standard applies only with respect to the initial filing of the infringement counterclaim and does not apply to determining whether Allcare's continued litigation of baseless claims was frivolous. . . . That is not correct. Rather, the objective prong requires a retrospective assessment of the merits of the entire litigation determined 'based on the record ultimately made in the infringement proceedings.'"); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 559 F. Supp. 2d 947, 968 (W.D. Wis. 2008) ("Taurus's decision to proceed in the face of this court's [claim] constructions prolonged the litigation in bad faith."); *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersystems Gmbh*, No. 98-cv-01072-RPM, 2008 WL 410413, at *5 (D. Colo. Feb. 12, 2008) ("After receiving the Court's claims construction ruling, however, Medtronic and the MWE lawyers had a duty to reexamine this litigation and make an objective assessment of the validity of Medtronic's claims that BrainLAB's products infringed the patent claims as construed.").

BIAX's conduct in this case was similar to that of MarcTec and Phonometrics. *See MarcTec*, 664 F.3d 907; *Phonometrics*, 350 F.3d at 1247. Lacking a viable theory of infringement after the Court construed the claims, BIAX did not reevaluate its infringement claims, as it was required to do, *see Highmark*, 687 F.3d at 1310, but chose instead to oppose summary judgment by essentially ignoring the Court's previous rulings. *See, e.g.*, Docket No. 231 at 37 ("defendants are correct that any processor element is able to access any condition code register"); Docket No. 231 at 44

("to the extent there is any dispute over whether, despite the foregoing, condition code storage locations are shared by all processor elements, the Court rules that they are"); Docket No. 455 at 2 ("The Court, however, ruled that it is unnecessary to include the attribute of shared access in the construction of the two terms because such a quality was already clearly provided for by the claims at issue. . . . The Court, therefore, sees little risk that plaintiff will attempt to argue at trial that processor elements are not able to access any condition code registers or condition storage locations.").  BIAX argued (1) that the "shared access" limitation did not apply to all claims,[8] and (2) that there was no limitation requiring that each processor element be able to access any condition code register on the chip.  Docket No. 757 at 4-9.  BIAX's reliance on *SunTiger* to support its second argument was unavailing because the patents did not read on any part of the accused devices.  *See SunTiger*, 189 F.3d at 1336 ("If a claim reads merely on a part of an accused device, that is enough for infringement.").

Just as MarcTec pursued its claim even after obtaining "documentary evidence" that the accused device did not meet one of the claim limitations, BIAX persisted in litigating this case even after its own expert conceded that the processors in defendants' chips cannot access all of the condition code storage locations.  *Compare MarcTec*, 664 F.3d 907 *with* Docket No. 956-2 at 8, ll.12-18.  BIAX's decision to proceed, not only in the face of the Court's claim construction, but in light of its own

---

[8] Specifically, BIAX argued that, according to its reading of the claim construction, the "shared access" limitation applied only to claim 2 of the '628 Patent and claim and claim 1 of the '313 Patent, even though those claims were not asserted by BIAX and not construed in the claim construction.  *See* Docket No. 1018 at 7-8; Docket No. 231 at 3-6.

expert's testimony supporting a finding of non-infringement, "prolonged the litigation in bad faith." *See Taurus IP*, 559 F. Supp. 2d at 968. Thus, this case is exceptional under 35 U.S.C. § 285.

As to the second prong under § 285, the facts here favor an award of fees. First, the question in this case was not close: once it became clear that defendants' devices did not meet the "shared access" limitation, the outcome of the litigation was determined. *See Nat'l Presto Indus.*, 76 F.3d at 1197. Second, BIAX's persistent disregard of the Court's unambiguous statements in orders evidences its culpability. *See Superior Fireplace*, 270 F.3d at 1378. Third, BIAX's conduct in aggressively pursuing this litigation, even after the unequivocal statement of its own expert that defendants' devices could not infringe the asserted patents, supports the conclusion that "fee shifting may serve as an instrument of justice" in this case.[9] *See id.*

Accordingly, the Court finds that defendants are entitled to recover fees and costs incurred between June 23, 2011, the date of Dr. Davidson's deposition, and March 26, 2012, when the Court granted defendants' motion for summary judgment [Docket No. 947].

### B.  Effect of the Protective Order

BIAX filed a supplemental response [Docket No. 1017] to defendants' motion for attorney's fees in which it argues that the corporation cannot be held liable under § 285 because the protective order [Docket No. 90] issued in this case permitted only BIAX's

---

[9] BIAX's argument that defendants are not entitled to attorney's fees because they did not file their motion for summary judgment sooner is unpersuasive. The burden is not on defendants to prevent a plaintiff from advancing a baseless claim.

outside counsel to review many of the court filings, rendering it "impossible for the Company to compare the accused products against the parameters of the Court's claim construction and direct its litigation decisions accordingly." Docket No. 1017 at 6.[10] BIAX asserts that its inability to access the restricted materials prevented it from "form[ing] the subjective bad faith necessary to impose liability" under 35 U.S.C. § 285. Docket No. 1017 at 4, 2. BIAX concludes that, given the terms of the protective order, "[t]he Company had no choice . . . but to rely on its qualified experts and advisors, and their conclusions that the claims had merit notwithstanding the Court's claim construction rulings." Docket No. 1017 at 7.

BIAX does not explain, however, why the protective order prevented outside counsel from discussing with corporate counsel the implications of the Court's claim

---

[10] Under the protective order, either party could place the designation "Attorneys' Eyes Only" on "information, documents, and things the Designating Party believes in good faith [are] not generally known to others and [have] significant competitive value such that unrestricted disclosure to others would create a substantial risk of serious injury and which the Designating Party (i) would not normally reveal to third parties except in confidence. . ., or (ii) believes in good faith is significantly sensitive and protected by a right to privacy under federal law or state law or any other applicable privilege or right." Docket No. 90 at 2, ¶ 4. Material so designated by defendants could only be viewed by authors, addressees, or recipients of that material; counsel of record; outside consultants who agreed to keep the material confidential; the Court and its personnel; and professional vendors who agreed to keep the material confidential. Docket No. 90 at 6-7, ¶¶ 16(a)-(h). This designation could be challenged by the opposing party. Docket No. 90 at 19-20, § M. BIAX contends that "much of the discovery received from Defendants bore an Attorneys' Eyes Only designation, including product manuals and the RTL code that explains the manner in which the Defendants' devices function and process. [BIAX] paid exceptionally qualified experts, such as Dr. Davidson, to study the accused products and millions of lines of code, but the Company itself was unable to review the work, the resulting infringement contentions, or the deposition testimony of its experts. The Company was under similar restrictions with respect to Defendants' experts and their reports, conclusions and testimony." Docket No. 1017 at 3-4.

construction or from alerting corporate counsel about the bottom line conclusions reached by Dr. Davidson regarding whether the accused devices met the "shared access" requirement.  This omission is especially notable in light of the fact that many documents that drew attention to the importance of the "shared access" requirement were publicly filed.  *See, e.g.*, Docket No. 231; Docket No. 355; Docket No. 455. Moreover, although BIAX claims that "the Company was unable to take part in the analysis that Defendants now claim was conducted improperly," Docket No. 1017 at 2, BIAX does not suggest that it did not have general discussions with outside counsel along the lines mentioned above or even that, in cases of this sort, "the limited number of internal representatives" at BIAX, *id*. at 2 n.2, would review the type of technical information subject to the protective order and direct outside counsel's litigation strategy accordingly.  Thus, the company's statement that it "had no choice but to rely on its qualified experts and advisors," *id*. at 7, does not distinguish this case from a case without a protective order.

Although BIAX argues that it could not form the necessary intent without access to information describing the accused devices, it does not argue that it proceeded on the mistaken belief that those devices met the "shared access" limitation.  Rather, it argues that, ignorant of "the identity, number or functionality of the accused products or devices," BIAX was entirely unable to assess the validity of its claims.  *See* Docket No. 1017 at 6.  However, BIAX cannot simultaneously assert that it had a reasonable basis for maintaining its litigation, *see* Docket No. 1018 at 1, and that it had no way of knowing whether or not it had a reasonable basis for maintaining its litigation.  *See*

Docket No. 1017 at 6-7.  Given that BIAX was privy to the Court's claim construction and thus aware of the "shared access" limitation, and privy to the arguments advanced by its counsel denying the existence of that limitation, BIAX has failed to show that the protective order prevented it from forming the requisite intent.  *See Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990) ("The 'should know' rubric obviously applies when a party attempts to escape the consequences of its conduct with the bare statement, 'I didn't know.'").

Finally, even assuming that the protective order prevented BIAX from fully comprehending the technical details of the accused devices or independently determining whether they met the "shared access" requirement, the fact remains that outside counsel served as BIAX's agent, acting on its behalf, throughout the course of this litigation.  *See* Restatement (Third) of Agency § 1.01.  BIAX has shown no reason under § 285 that it should be relieved of liability for the conduct of its agent.  *See id.* at § 2.01(c) ("Many forms of action . . . by an agent may carry legal consequences for the principal if the agent's act is done with actual or apparent authority.").

Accordingly, the argument advanced in BIAX's supplemental response is unavailing.

### C.  Fee Awards under 28 U.S.C. § 1927

Defendants advance 28 U.S.C. § 1927 as an alternative basis for a fee award. Docket No. 956/981 at 12-13.  As the Court is granting defendants' motion for fees pursuant to § 285, it will deny the alternative request under § 1927.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion for Recovery of Attorneys' Fees and Expenses Incurred After Claim Construction [Docket No. 956/981] is GRANTED in part and DENIED in part.  Defendants are entitled to an award of fees and costs incurred between June 23, 2011 and March 26, 2012, pursuant to 35 U.S.C. § 285, in an amount to be determined in a subsequent order.

DATED March 30, 2013.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge